## McWILLIAMS BROS., Inc., v. DIRECTOR GENERAL OF RAILROADS
### (two cases).

(Circuit Court of Appeals, Second Circuit.    March 2, 1921.)

### Nos. 156, 157.

1. **Towage ⬤⇒11(1)—Tug bound only to reasonable skill, care, and diligence.**
   A towing tug is a bailee for hire, and as such bound to exercise only reasonable skill, care, and diligence, dependent on the circumstances of the particular case.

2. **Towage ⬤⇒11(1)—Master of tug bound to know dangers of channel.**
   The master of a towing tug is bound to know the channel and its currents, and dangers which are known generally to men experienced in its navigation.

3. **Towage ⬤⇒11(8)—Tug liable for injury to tow.**
   A tug *held* liable for injury to a barge from sunken wrecks over which she was towed, where the presence and position of the wrecks were known, and the channel was of sufficient width to avoid them.

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty by McWilliams Bros., Incorporated, against the Director General of Railroads, operating the Pennsylvania Railroad and the steam tug P. R. R. 35. Decrees for libelant, and respondent appeals. Affirmed.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Charles E. Wythe, both of New York City, of counsel), for appellant.

Herbert Green, of New York City, for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. Testimony on these two cases was taken on the same day in the court below. By stipulation of counsel it was agreed that the testimony taken in each might be used in the other. The trial disposed of both cases in a single opinion; the vital point in each case being the same. The cases were heard in this court together, and they will be determined here in one opinion.

The libel in the first case was against the Pennsylvania Railroad Company and against all persons lawfully intervening for their interests therein. In the second case it was filed against the steam tug P. R. R. 35, her boilers and engines, and against all persons lawfully intervening for their interests therein. And on the same day that the libels were filed the court entered an order in each case, on motion of the proctors for the respondent and for the Director General of Railroads, and with the consent of the proctor of the libelant, that the Director General of Railroads (operating Pennsylvania Railroad) be substituted as respondent in the place and stead of the Pennsylvania Railroad, with the same force and effect as if the suit had originally been brought against him.

---
⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Pennsylvania Railroad Company filed a petition under the fifty-ninth rule in admiralty (29 Sup. Ct. xlvii) in each case to implead M. J. Mulqueen and William Molyneaux, owners, respectively, of the wrecks of the coal boats M. J. Mulqueen and George W. Chambers, with which the Red Rose collided. Repeated efforts to obtain service upon Mulqueen and Molyneaux were fruitless, and process was returned as not found. A decree was entered in favor of the libelant in both cases. In the first case it was entered in the sum of $2,066.03. In the second, the sum was $302.28.

In both cases the injury complained of was to the barge Red Rose. In the first case the injury was done on January 22, 1918. In the second case it occurred on March 11, 1918. In both cases the barge was in a tow which the respondent's tugs were hauling through the channel leading from South Amboy, N. J. The claim is that the barge was carelessly and negligently dragged over two wrecked and sunken boats lying in the channel, and which the respondent knew were there, and knew that they were a danger and menace to any tows hauled through those waters. The sunken boats were the Mulqueen and Chambers, already referred to.

The dredged channel in which the wrecks lay is 300 feet wide, and the wrecks, the District Judge found, were on the upper side of it, and could not have diminished the width of the channel by more than 40 feet at the most. The wrecks had been in that position since January 12, 1918, which was ten days before the first injuries complained of happened, and two months before the second injuries. And the District Judge has also found that their presence there was known to the Pennsylvania Railroad tugmasters. That they had this knowledge is beyond question. The day after the Mulqueen and Chambers were sunk the evidence shows that the Pennsylvania Railroad Company had actually marked the spot with a spar buoy, but that it had been carried away. At the time the injuries occurred the wrecks were unmarked.

[1] The sole question is whether the tugs were navigated with that degree of care which the known conditions imposed upon them. It is elementary that in every contract of towage it is impliedly agreed that the tug will use proper skill and diligence, and that she will not unnecessarily by negligence or mismanagement imperil her tow. The highest degree of skill is not required, for she is not a common carrier; neither is she an insurer. She is merely a bailee for hire. As such she is simply bound to exercise reasonable skill, care, and diligence. Eastern Transportation Line v. Hope, 95 U. S. 297, 24 L. Ed. 477; The John G. Stevens, 170 U. S. 113, 126, 18 Sup. Ct. 544, 42 L. Ed. 969. From what has been said we must be understood as meaning that the degree of skill, care, and diligence for which the tug is liable is dependent upon the peculiar circumstances of each particular case and of the special hazards of the waters traversed. Societe des Voilers Francais v. Oregon R., etc., Co. (D. C.) 178 Fed. 324.

[2] The master of the tug is bound to know the channel and its usual currents, and dangers which are known generally to men experienced in its navigation. The Inca (D. C.) 130 Fed. 36, aff'd 148 Fed. 363,

78 C. C. A. 273. And he must exercise that degree of care, caution, and maritime skill which prudent navigators usually employ in similar services. In all such cases the burden rests upon the libelant to prove affirmatively that the tug is in fault. The Winnie, 149 Fed. 725, 79 C. C. A. 431.

[3] We think that in the instant cases the burden has been sustained and that it affirmatively appears that those in charge of the tugs failed to exercise due care. The wrecks of the sunken Mulqueen and Chambers were known and must be regarded in the same way that known, but uncharted, rocks would be. It would be the duty of a competent navigator to keep his tug and tow off of an obstruction in the channel, the existence and place of which he knew. The only thing which could excuse him in such a case would be vis major, and there is no suggestion of that in either of the cases now before us. The tug captains were bound to avoid these wrecks, the existence and location of which they knew, if the ordinary skill and competency of their class rendered such avoidance possible. The testimony in this case disclosed that such avoidance was possible. Many coal tows passed these wrecks in safety during the winter and early spring of 1918. The Pennsylvania Company and the Director General were using this channel constantly for its long tows, both going and coming, light and loaded, and did so successfully avoiding collisions.

In The Wyomissing, 228 Fed. 186, 142 C. C. A. 542 this court said:

"If the tow strikes a rock in the channel, as the District Judge found in this case, the claimant is bound to show that the rock was an unknown obstruction."

And in Lehigh Valley Transportation Company v. Knickerbocker St. Co., 212 Fed. 708, this court said that a tug—

"is bound to know, not only what appears upon government charts, but whatever is known to persons in the habit of navigating the waters in question. But for striking a rock uncharted and unknown to local navigators the tug is not responsible."

In the instant cases the obstructions caused by these wrecks were admittedly well known to navigators and to those in charge of the tugs that had the Red Rose in tow; and if due care had been exercised the tugs would have had no difficulty in keeping away from the wrecks in a 300-foot channel, with the wrecks on the upper edge of it, and not diminishing it at the most more than 40 feet.

Decrees affirmed in both cases.