## THE CONVOY.

(District Court, S. D. New York. February 15, 1926.)

Towage ⟨key⟩11(5)—Tug held liable for grounding of tow in Newtown Creek, where water was of less depth than her stated draft.

A tug *held* in fault for the grounding of a schooner in tow in Newtown Creek at a place outside the channel, and where the water was of less depth than her stated draft.

In Admiralty. Libel by the Oneida Navigation Corporation against the steam tug Convoy; the Newtown Creek Towing Company, claimant. Decree for libelant.

Bigham, Englar & Jones, of New York City (L. J. Matteson, of New York City, of counsel), for libelant.

Edward Ash, of New York City, for claimant.

THACHER, District Judge. March 9, 1922, the steam tug Convoy took in tow on her port side the libelant's schooner Perry Setzer, a little below the entrance to Newtown Creek, for the purpose of towing the schooner under a contract of towage to the Cross & Ireland dock, Newtown Creek. The tide was flood and about half high.

The captain of the tug was advised by the master of the schooner that her draft was 19 feet 3 inches. Before entering Newtown Creek it was necessary to wait outside for a tow and barges which were coming out. The tug with the schooner in tow then proceeded in, and when off the New York Sugar Refining Company bulkhead the schooner grounded, doing serious injury to her keel.

The libelant seeks to hold the Convoy, as the towing vessel, responsible for the resulting damages. She was, of course, bound to know the well-known channel. White v. Upper Hudson Stone Co. et al. (C. C. A.) 248 F. 893, 160 C. C. A. 651; McWilliams Bros., Inc., v. Director Gen. of Railroads (C. C. A.) 271 F. 931. But the claimant insists that the grounding occurred in mid-channel, either upon an uncharted shoal, or by reason of some obstruction present at the time of the accident. From the nature of the injuries suffered by the schooner, I infer that the vessel grounded either upon rock or upon some other equally solid obstruction. From the hydrographic chart prepared by the United States Army Engineers, which is in evidence, it appears that within about 100 feet from the northerly side of the channel, at a point about 200 feet south of the bulkhead of the New York Sugar Refining Company, there is stone bottom, which at the height of the water at the time of the accident would be not more than 19 feet below the surface.

The point at which the grounding occurred is shown by the testimony of the libelant's witnesses to be in very close proximity to this shoal and rocky bottom. The tug boat captain places the grounding in the channel, estimating his location by his recollection of the distance from his starboard rail to a number of scows and barges which at the time of the grounding were moored on the southerly side of the creek. In so far as there is any conflict between his testimony and that of the witnesses called by libelant, I regard their testimony as entitled to the greater weight, first, because I was not particularly impressed with the credibility of the tug captain; and, second, because I cannot believe that the obstruction encountered could have lain in mid-channel, as he contends.

No such obstruction was reported by the claimants or any one else to the United States Army Engineers, although, if the tug captain's testimony is to be accepted as true, it must have lain directly in the course of many passing vessels. It was a matter of the greatest importance to the claimant, which was engaged in the business of towing vessels in and out of Newtown Creek, to have such an obstruction removed at once, if it lay in the channel as the tug captain claims, and yet no report was made by the claimant to the United States Army Engineers' office until April 17, 1922, over a month after the grounding occurred, and apparently then only because a claim for damages had been made by libelant. A few days after the accident representatives of both parties made soundings in an endeavor to fix the place where the grounding occurred. The testimony in regard to this matter confirms my belief that the grounding did not occur in the

channel, but upon the rocky bottom indicated on the engineer's chart.

By reason of some leakage during the day, the draft of the schooner may have been very slightly in excess of the figure stated to the captain of the tug. Whatever this slight difference may have been, it was not sufficient to be a contributing cause of the grounding, which must therefore be held to be chargeable solely to the fault of the towing vessel. The tug was clearly at fault in grounding the schooner outside the channel and in less water than her stated draft.

Decree for libelant, with usual provision for reference.