## DAVIDSON STEAMSHIP COMPANY *v.* UNITED STATES.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 220.  Argued March 1, 1907.—Decided March 25, 1907.

Where negligence is a mere question of fact and nothing appears which is negligence *per se*, the determination of the question is peculiarly the province of the jury and its conclusions will not be disturbed unless it is entirely clear that they were erroneous.

There is an obligation on all persons to take the care which, under the special circumstances of the case, a reasonable and prudent man would take, and the omission of that care constitutes negligence.

It is within the province of the jury to determine whether a captain of a steamship, also acting as pilot thereof, who fails to keep himself informed of changes made from time to time in the different harbors which he is likely to visit, is guilty of negligence in colliding with a Government breakwater, in course of erection, and on which the lights have been changed, and even though there may have been evidence warranting the finding of contributory negligence on the part of the Government in the way it left the lights, this court will not set aside the verdict after it has been approved by the trial court and the Circuit Court of Appeals. 142 Fed. Rep. 315, affirmed.

THE facts are stated in the opinion.

*Mr. Charles E. Kremer* and *Mr. Hermon A. Kelley* for plaintiff in error:

The existence of the breakwater was not known, and it could not, in the darkness, be seen in sufficient time to be avoided.

It is not claimed that any notice of the actual construction of the breakwater or what its condition was on the night of the disaster, or what light it bore, was ever sent out prior to the disaster. The court refused to permit the defendant to show that it was sent out afterwards on October 19, 1901.

No negligence is shown on the part of the master of the *Shenandoah.*

The notices which the Government sent out to mariners, Exhibits "B" and "C," were either never sent to Captain McAvoy, master of the *Shenandoah*, or were not received by him.

Had he received and read them, they would not have informed him of the obstruction which he encountered and collided with.

The evidence shows such contributory negligence on the part of the Government that there is no right of recovery.

The specific negligence of the Government consists:

In not having published or given notice of the actual construction or location of the breakwater.

In not giving notice of the white light which was being displayed to mark it.

In giving misleading notices indicating that the breakwater was completed and that the end of it was marked by a red light.

In using a white instead of a red light to mark the outer end of the breakwater.

*Mr. Milton D. Purdy*, Assistant to the Attorney General, for defendant in error:

Where contributory negligence is alleged by the defendant, such question is to be determined by the jury, unless no recovery could be had upon any view of the case. *Railroad Co.* v. *Fraloff*, 100 U. S. 24, 31; *Kane* v. *Northern Central Ry. Co.*, 128 U. S. 91, 94; *Dunlap* v. *Northeastern R. R. Co.*, 130 U. S. 652; *R. & D. R. R. Co.* v. *Powers*, 149 U. S. 43, 44, 47; *Alaska Steamship Co.* v. *Collins*, 127 Fed. Rep. 937, 940; *Chicago Great Western Ry.* v. *Price*, 97 Fed. Rep. 423, 428, and cases cited.

The cases cited by counsel for plaintiff in error to sustain their contention that the Government was guilty of contributory negligence, when properly examined do not support the position. *Casement* v. *Brown*, 148 U. S. 615; *Harrison* v. *Hughes*, 110 Fed. Rep. 545; *United States* v. *Dunn & Co.*, 124 Fed. Rep. 705, 707, discussed and distinguished.

MR. JUSTICE BREWER delivered the opinion of the court.

On April 1, 1902, the United States commenced this action in the Circuit Court of the United States for the District of Minnesota to recover for injuries charged to have been done through the negligence of the Davidson Steamship Company to a Government breakwater at Two Harbors, Lake Superior. The defendant answered, denying the negligence and alleging that the result was due to the negligence of the Government, the plaintiff. No question was made as to the amount of the injury. Trial was had before a jury, which returned a verdict for the Government. Judgment thereon was entered by the Circuit Court. This judgment was affirmed by the Circuit Court of Appeals for the Eighth Circuit, 73 C. C. A. 425, and from that court brought here on writ of error.

In a general way, the facts are that on the night of July 24, 1901, the steamer *Shenandoah*, the property of the steamship company, ran into the Government breakwater at Two Harbors, Minnesota. Agate Bay, Lake Superior, is the harbor of the village of Two Harbors, and is an open bay, across the mouth of which there are breakwaters extending from either shore, running in an easterly and westerly direction, and leaving an open space as an entrance to the iron ore and other docks in the bay. The breakwater extending from the easterly side had been constructed for a number of years, extending into the bay for a distance of about seven hundred and fifty feet, and its outer end indicated in the night time by a fixed, large red light, fifteen or twenty feet high. In 1899 the Government projected an extension of this breakwater of about three hundred feet in length, and at an angle of forty-five degrees from the original breakwater. At the time of the injury this extension, composed of wooden cribs filled with stone, had been carried to its full length, but not built up to its intended height, and, in fact, rising only a few inches above the surface of the water. On the extreme outward end of the new extension was a mast or pole about twelve feet

high, and on it was hung an ordinary white light or lantern. The original fixed red light on the old breakwater had been moved back some thirty feet, in order that the new work could be properly joined to the old.

On the evening named the *Shenandoah* loaded a cargo of iron ore at Superior, Wisconsin, and proceeded to Two Harbors, to take in tow a barge that was being loaded there. When the vessel left Superior the night was dark and stormy and the sky covered with clouds, with a heavy wind blowing from the northeast, making a high sea. Arriving off Two Harbors at about 11 o'clock, the steamer headed for the entrance, intending to enter port, as she had formerly done, close to the easterly breakwater. When she had approached within about two hundred feet the surf was seen breaking over the extension of the breakwater. Her engines were promptly stopped and reversed, but, notwithstanding this, she struck this extension about one hundred and twenty-five feet from the fixed red light, and did considerable damage to it, but without injury to herself. The port of Two Harbors is on the north side of Lake Superior, about twenty-seven miles from Duluth, and one of the most important iron ore loading points on the Great Lakes.

Now, whether the injury was the result of negligence, and which party was guilty of negligence, are questions of fact properly determinable by a jury. These questions are the only ones discussed by counsel for the steamship company, and therefore to them alone we direct our attention. It is true in the assignment of errors some other matters are named, but they are not called to our attention in brief or argument, and an examination of them shows that very properly counsel for the steamship company considered them not sufficiently important to justify any discussion.

It is well, before noticing the testimony, to consider the extent to which our inquiry may properly go. The settled rule is that where negligence is a mere question of fact, and nothing appears which is negligence *per se*, the determination

of the question is peculiarly the province of a jury, and its conclusions will not be disturbed unless it is entirely clear that they were erroneous. Courts do not approach the question as an original one and consider whether, in their judgment, the testimony does or does not prove negligence, but accept the determination of the jury, if there is any evidence upon which it can be rested. This is the general rule in respect to all mere questions of fact. Authorities in this court, as well as in others, are abundant and clear on this point. It is sufficient to refer to one or two.

*Railroad Company* v. *Stout*, 17 Wall. 657, was an action to recover damages in behalf of a boy six years of age for injuries sustained upon a turntable belonging to the railroad company. This turntable was in an open space, about eighty rods from the company's depot, in a village of from one hundred to one hundred and fifty persons. The railroad ground was not enclosed or visibly separated from the adjoining property, and was about three-quarters of a mile distant from the house of the child's parents. The boy, with two older boys, went to the turntable and commenced playing on it. It was not watched or guarded by any servant of the company. It was not fastened or locked, and revolved easily on its axis. While so playing he was injured. The jury found the company guilty of negligence. In affirming the judgment this proposition was stated (664):

"It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they

can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

In *Railroad Company* v. *Fraloff*, 100 U. S. 24, 31, one question was as to the value of property for which the company was responsible. Sustaining a judgment against it, we said:

"If the jury acted upon a gross mistake of facts, or were governed by some improper influence or bias, the remedy therefor rested with the court below, under its general power to set aside the verdict. But that court finding that the verdict was abundantly sustained by the evidence, and that there was no ground to suppose that the jury had not performed their duty impartially and justly, refused to disturb the verdict, and overruled a motion for a new trial. Whether its action, in that particular, was erroneous or not, our power is restricted by the Constitution to the determination of the questions of law arising upon the record. Our authority does not extend to a reëxamination of facts which have been tried by the jury under instructions correctly defining the legal rights of parties. *Parsons* v. *Bedford*, 3 Pet. 446; 21 How. 167; *Insurance Company* v. *Folsom*, 18 Wall. 249."

In *Dunlap* v. *Northeastern Railroad Company*, 130 U. S. 649, 652, this was the ruling:

"The Circuit Court erred in not submitting the question of contributory negligence to the jury, as the conclusion did not follow, as matter of law, that no recovery could be had upon any view which could be properly taken of the facts the evidence tended to establish. *Kane* v. *Northern Central Railway*, 128 U. S. 91; *Jones* v. *East Tennessee, Virginia & Georgia Railroad Co.*, 128 U. S. 443."

In *Richmond & Danville Railroad Company* v. *Powers*, 149 U. S. 43, 45, the jury having found the railroad company guilty of negligence, we sustained the verdict and judgment, saying:

"It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a

jury; and this, whether the uncertainty arises from a conflict in the testimony, or because the facts being undisputed, fair-minded men will honestly draw different conclusions from them. *Railroad Co.* v. *Stout*, 17 Wall. 657; *Washington & Georgetown Railroad* v. *McDade*, 135 U. S. 554; *Delaware & Lackawanna Railroad* v. *Converse*, 139 U. S. 469."

From these authorities, and many more of a kindred nature could be cited, it is obvious that the question for us to consider is whether there was testimony from which the jury might rightfully find the defendant guilty of negligence. It appears that the captain of the steamship had been for many years on the lakes, and that he was acting as pilot of the ship at the time of the collision. The harbor was one of great importance, although he had not been in it for over a year. He knew that harbor improvements on the Great Lakes were being made by the Government, that information of the condition of those improvements was given from time to time by circulars from the Departments, and still made no efforts to ascertain the then condition of the harbor, the only chart he had being an old one. In addition to the fact that he knew where information could be obtained, might have assumed that he would be likely to be sent to any one of the many important harbors, and ought to have prepared himself therefor, there was testimony that official circulars and notices were mailed to him at his post office address, although he states that he failed to receive them, and relied upon the knowledge which he had from his visit of more than a year theretofore and upon what he should find as he entered the harbor. Now there is an obligation on all persons to take the care which under the special circumstances of the case a reasonable and prudent man would take, and the omission of that care constitutes negligence. It was said by Mr. Justice McLean, delivering the opinion in *Culbertson* v. *Shaw et al.*, 18 How. 584, 587:

"When a steamer is about to enter a harbor great caution is required. There being no usage as to an open way, the

vigilance is thrown upon the entering vessel. Ordinary care, under such circumstances, will not excuse a steamer for a wrong done."

In *Atlee* v. *Packet Company*, 21 Wall. 389, 396, Mr. Justice Miller, commenting on the duty of a pilot of a river steamer, makes these observations:

"But the pilot of a river steamer, like the harbor pilot, is selected for his personal knowledge of the topography through which he steers his vessel. In the long course of a thousand miles in one of these rivers, he must 'be familiar with the appearance of the shore on each side of the river as he goes along. Its banks, towns, its landings, its houses and trees, and its openings between trees, are all landmarks by which he steers his vessel. The compass is of little use to him. He must know where the navigable channel is, in its relation to all these external objects, especially in the night. He must also be familiar with all dangers that are permanently located in the course of the river, as sand bars, snags, sunken rocks or trees, or abandoned vessels or barges. All this he must know and remember and avoid. To do this he must be constantly informed of changes in the current of the river, of sand bars newly made, of logs, or snags, or other objects newly presented, against which his vessel might be injured. In the active life and changes made by the hand of man or the action of the elements in the path of his vessel, a year's absence from the scene impairs his capacity, his skilled knowledge, very seriously in the course of a long voyage."

It would not be strange if the jury found that a captain engaged in the navigation of the waters of Lake Superior was guilty of negligence in not keeping himself informed of changes going on from time to time in the different harbors which he was likely to be called upon to visit. His very want of knowledge, when he had the means of ascertaining the facts, could properly be regarded as negligence. Clearly it could not be held as matter of law not to be so.

It is true he was apparently misled by the lights on the

breakwater, and we do not mean to intimate that there was no evidence from which the jury would have been warranted in finding that the Government was guilty of negligence in' the way in which it left those lights. But no omission or negligence on the part of the Government avoids the fact that there was testimony from which the jury was justified in finding the captain guilty of negligence, and for that negligence the steamship company was responsible. The jury might have thought that if he had kept himself properly informed in reference to the condition of that as of other important harbors he would not have been misled by the condition of the lights. At any rate the verdict of the jury was against the contention of contributory negligence on the part of the Government, and the jury was the tribunal to determine this, as well as the question of negligence. We could not set aside the verdict of the jury, approved as it was by the trial court and the Court of Appeals, without ourselves exercising the function of triers of fact, when under the law such questions are committed to the determination of a jury.

The judgment is

*Affirmed.*