THE TRANSFER NO. 8.

THE NO. 25.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

Nos. 87–88.

COLLISION (§ 96*)—VESSELS PASSING AND COMING OUT OF SLIP—FAILURE TO MAINTAIN LOOKOUT.

A tug passing up East River before daylight about 125 feet from the piers, with a car float alongside projecting ahead 170 feet, *held* solely in fault for a collision between her tow and a transfer tug, which backed out of a slip after giving a slip whistle, on the ground that she should have heard such whistle and that she did not have a lookout on the float.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. § 96.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the Southern District of New York.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in admiralty for collision by the New York Central & Hudson River Railroad Company, owner of steam tug No. 25, against the Transfer No. 8, the New York, New Haven & Hartford Railroad Company, claimant, with cross-libel against tug No. 25. Decree against tug No. 25, and her claimant appeals. Affirmed.

These causes come here upon appeals from decrees of the District Court of New York which held tug No. 25 solely to blame for a collision between herself and Transfer No. 8. In the early morning, before daylight, No. 25 was bound up in the East River about 125 to 130 feet from the piers bound for Pier 34. She was going at full speed, but with a loaded car float on her starboard side was making slow progress against an ebb tide. The car float projected ahead of her about 170 feet, and there was no lookout on the float. When her pilot house reached the south side of Pier 30, her master saw the stern and staff lights of No. 8 projecting beyond the upper side of Pier 31, the covered portion of which shut out any view of vessels on her upper side. He had heard no slip whistle from her.

No. 8 had brought a lighter to the upper side of Pier 31, and after remaining tied up there a short time cast off her lines, blew a slip whistle, and proceeded to back out of the slip. The first deckhand was stationed aft. He could see nothing below Pier 31 on account of its height, but made out No. 25 when the stern of his tug reached the pier end. He at once sung out for the captain to go ahead, as there was a boat coming up close along the docks. The captain at once gave an order to stop, and a bell to go ahead, and a jingle. When No. 25 reached Pier 30, and before she saw No. 8, her master gave a slow bell, and as soon as he saw No. 8 gave a single whistle, which No. 8 answered with an alarm. No. 25 did not reverse. Reversal would have tended to throw her bow inshore.

The vessels collided about 125 feet outside the pier line. The District Judge held No. 25 in fault for not hearing the slip whistle and not maintaining a lookout on the float.

Barry, Wainwright, Thacher & Symmers, of New York City (James K. Symmers, of New York City, of counsel), for appellant.

Charles M. Sheafe, Jr., and James T. Kilbreth, both of New York City, for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. The appellant contends that No. 8 was at fault in failing to stop her sternway in time to avoid collision. Whether she could have done so depends naturally on the speed she had reached when she first saw No. 25. All difficulties and inconsistencies in the testimony, which are urged in argument, are explained by the fact that No. 8 was much further in the slip than the 50 feet her master estimated he was from the end of the pier. The slip is 330 feet long. He tied his lighter close up to the bulkhead, and lay himself bow inshore just a little out from the lighter. As No. 8 was 103 feet long, her stern must have been considerably further in than 50 feet from the pierhead. Naturally, when her lines were cast off, No. 8, to overcome inertia, would start her engines briskly, and her engineer says she did so. In consequence, by the time she came near enough to the end of the pier to sight No. 25, her speed was such that she could not at once overcome it. We see no fault in her starting as she did, having warned every one with her slip whistle, which was not heard on No. 25, no doubt because there was no lookout on the float. We find no fault

in the navigation of No. 8. The force of the blow, which has been much relied on in argument, was due not so much to the speed of No. 8 as to the momentum of No. 25.

Decree affirmed, with interest and costs.