## THE BANGOR.

## THE ZOUAVE.

### (Circuit Court of Appeals, Second Circuit. January 13, 1914.)

### No. 108.

1. COLLISION (§ 98*)—RULES FOR PREVENTING—SLIP WHISTLE.

Inland Navigation Rules, art. 18, rule 5 (Act June 7, 1897, c. 4, 30 Stat. 96 [U. S. Comp. St. 1901, p. 2882]), which provides that, when steam vessels are moved from their docks or berths and other boats are liable to pass from any direction toward them, they shall give the same signal as in case of vessels meeting at a bend (one long blast) does not fix any precise time at which the signal shall be given, and whether or not it should be given when the vessel starts to move apparently depends on circumstances, as the depth of the slip or the presence of other obstructing vessels.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 208–210; Dec. Dig. § 98.*]

2. COLLISION (§ 96*)—LEAVING AND ENTERING SLIP.

A decree affirmed which, on testimony given in open court, found a steam lighter solely in fault for a collision with another lighter in tow alongside a tug, near the entrance to a slip from which she was backing.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. § 96.*]

3. EVIDENCE (§ 601*)—COURSE OF TIDE.

That the current of a tidal river is flowing downstream is not conclusive that there is at the time an ebb tide, since the tide will be flooding at the bottom of the river for some time while the current is still running down on the surface.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2425–2429; Dec. Dig. § 601.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Owen J. McWilliams and others, owners of the lighter Moonlight, against the steam lighter Bangor, of which the Delaware, Lackawanna & Western Railroad Company was claimant, and cross-libel against the steam tug Zouave. Decree against the Bangor, and her claimant appeals. Affirmed.

J. L. Seager, of New York City (A. J. McMahon, of New York City, of counsel), for appellant.

Herbert Green, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. June 3, 1912, at about 6:40 p. m., the lighter Moonlight on the port side of the tug Zouave, while entering the slip between covered piers 4 and 5 of the Delaware, Lackawanna & Western Railroad Company on the North river, came into collision with the steam lighter Bangor, which was backing out. The Bangor started from the grain dock, a pier about 260 feet inside of the mouth of the slip between piers 4 and 5. The entrance is nearly 300 feet wide, but was reduced to about 200 feet, because of car floats lying at the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

river end of pier 4 on the north side and projecting into it some 90 feet.

The libel states that when the Zouave and her tow were 400 feet off the mouth of the slip, the tug's engines were slowed, and when 200 feet off stopped and the tow drifted about 50 feet into the slip when the Bangor blew the slip whistle and began to back out to port. The Zouave blew an alarm and began to go astern, but the Bangor did not start her engines ahead until she was within 10 feet of the bow of the lighter, when it was too late to avoid collision. The answer says that the Bangor blew the slip whistle, backed out straight, and when near the end of pier 5 the Zouave and her tow suddenly came around the end of the pier, from the south. The Bangor stopped and went ahead, but the Zouave kept on until the bow of the Moonlight struck the stern of the Bangor.

The captain of the Zouave testified that he rounded to and slowed down off the mouth of the slip, when from 400 to 500 feet away. After going half that distance he stopped, intending to drift in. He saw the Bangor when he first rounded to, lying at the grain dock, and when 200 feet off saw that she began to back out. Although he went astern at once, he got 50 feet inside of the end of pier 5, and the collision took place about 50 feet outside of that pier.

Moran, the mate of the Zouave, says that the tow was 50 feet inside the slip when the Bangor blew and began to back, and that the collision took place about 30 feet off the end of pier 5.

The master of the Bangor says he had backed 150 feet when he saw the tow coming around the end of pier 5 into the slip, and then he went ahead looked up, and the collision took place at the mouth of the slip.

[1] The story of the Zouave requires a finding of gross negligence on the part of the Bangor, whereas the story of the Bangor discloses a sudden emergency when a collision might readily occur, though both vessels at the moment of discovering each other navigated with prudence. The District Judge was induced to the conclusion that the Bangor was solely at fault by two considerations. One was that the slip whistle ought to have been blown before the Bangor started to back out, whereas her master admitted that he had proceeded some 50 feet before he blew, although the pleadings of both parties allege that he blew, as he began to move out. This signal is regulated by article 18, Rule 5 of the Inland Regulations which reads:

"  *   *   * When steam vessels are moved from their docks or berths and other boats are liable to pass from any direction toward them, they shall give the same signal as in the case of vessels meeting at a bend  *   *   *" (One long blast.)

The act does not fix any precise time at which this signal is to be blown. The time would apparently depend upon the circumstances of the case, e. g., if the vessel were lying high up in a deep dock or if her exit were obstructed by other vessels, notice might be more effective if given after than before she began to move. At all events, the signal was of no importance in this case because the witnesses on the Zouave testified that they saw the Bangor before she started out, and therefore they did not need to be apprised by a whistle at all

[2, 3] The other consideration was that on an ebb tide it was more likely that the Zouave would enter from a point opposite the slip than that she should come in around the corner of pier 5. The pleadings of both parties stated and the only testimony on the subject was to the effect that the tide was ebb. At the argument the claimant's counsel contended that the Official Tide Tables show that at 6:40 p. m. of this date it had been running flood for about two hours. He has since submitted the tide tables for 1912, contending that we may take judicial notice of the fact, even if it is contrary to what was alleged at the trial. It is to be remembered, however, that the currents of rivers do not synchronize with the tides. The tide tables do show that it was low water in the North river, where the Delaware, Lackawanna & Western Railroad Company's piers are, at 4:30 p. m. on June 3, 1912. They also show that the current continues to run down the river some 2½ to 3 hours after low water, so that at the time of the collision, although the tide would be flooding at the bottom of the river, the current on top would be still running down. See the subject treated in his usual admirable manner by the late Judge Addison Brown in the Ludvig Holberg (D. C.) 36 Fed. 914; also The Bremen (D. C.) 111 Fed. 228, 232; The Ciudad de Reus, 185 Fed. 392, 107 C. C. A. 447. Under these circumstances we do not feel at liberty to differ with the conclusion of the District Judge who heard and saw the witnesses.

Decree affirmed, with interest and costs.