LEHIGH VALLEY TRANSP. CO. v. KNICKERBOCKER STEAM TOWAGE
CO.

(Circuit Court of Appeals, Second Circuit. February 10, 1914.)ι

No. 146.

1. TOWAGE (§ 12*)—GROUNDING OF TOW—LIABILITY.
   That a barge being towed on a hawser 40 to 60 fathoms in length gradually sheered 35 feet from the course of the tug was not so unusual, where the master was unacquainted with the stream as to charge her with fault for grounding.

   [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 24–26, 29; Dec. Dig. § 12.*]

2. TOWAGE (§ 11*)—GROUNDING OF TOW—LIABILITY OF TUG.
   A towing tug is bound to know, not only what appears upon government charts as to obstructions, but whatever is known to persons in the habit of navigating the waters in question; but for striking a rock uncharted and unknown to local navigators she is not responsible.

   [Ed. Note.—For ·other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

3. EVIDENCE (§ 601*)—TIDAL RIVERS—COURSE OF TIDE.
   That the current of a tidal river is flowing downstream is not conclusive that there is at the time an ebb tide, since the tide will be· flooding · · at the bottom of the river for some time while the current is still running down on the surface.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2425, 2456–2459; Dec. Dig. § 601.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexeₚ

4. TOWAGE (§ 11*)—GROUNDING OF TOW—LIABILITY OF TUG.
    A tug *held* not liable for the stranding of her tow in the Kennebec river
    on a submerged rock which was uncharted and apparently unknown to
    local navigators, and where also the position of a buoy as shown on the
    government chart had been changed so that the channel at the place of
    stranding was not as it appeared on the chart.
    [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec.
    Dig. § 11.*]

Appeal from the District Court of the United States for the Southern District of ·New York.

Suit in admiralty by the Lehigh Valley Transportation Company, owner of ·the steel barge Buffalo, against the Knickerbocker Steam Towage Company. Decree for libelant, and respondent appeals. Reversed.

Hyland & Zabriskie, of New York City (Nelson Zabriskie, of New York City, of counsel), for appellant.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Robinson Leech, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This libel is filed to recover for damages sustained by the steel barge Buffalo as the result of running on a rock while in tow of the tug Seguin, belonging to the respondent. The District Judge directed a decree for the libelant.

July 9, 1911, the tug Seguin at Bath, Me., took in tow the steel barge Buffalo on a hawser 45 to 60 fathoms in length and behind her the light schooner Mary Weaver on a shorter hawser. The destination of the tow was to points higher up the Kennebec river. The tug drew 11½ feet, the barge 14 feet 1 forward and 14 feet 3 aft, and the schooner 7½ feet. As the tow approached Abadagassett Point, some six miles above Bath, she proceeded on the government ranges and while passing a black buoy close aboard on the port side the Buffalo, which was sheering some 35 feet to the starboard of the tug, fetched up at a point opposite, and estimated to be from 90 to 100 feet east by north of the black buoy. The schooner, continuing on her course, ran into the port quarter of the barge, and was carried by the tide alongside and turned bow downstream. In about half an hour, as the tide rose, the tug pulled the barge off and proceeded.

[1] The respondent's first contention is that if the barge had followed in the wake of the tug, the accident would not have happened, and that therefore her own negligence was the proximate cause of it. We, however, think such gradual sheering by a barge towed on a hawser is not unusual, and that the master of the barge, being unacquainted with the stream, could not be charged with the grounding as a fairly to be expected consequence of the sheer, even if it were the result of his inattention.

[2] The rock was not indicated on the chart, and the case turns upon the question whether it was known to persons navigating the

Kennebec river. The law is extremely simple. The barge having been injured while in tow on a well-known and safe route, the burden of explanation is on the tug. She is bound to know, not only what appears upon government charts, but whatever is known to persons in the habit of navigating the waters in question. But for striking a rock uncharted and unknown to local navigators, the tug is not responsible. The Nathan Hale, 99 Fed. 460, 39 C. C. A. 604.

[3] When it comes to the question of fact, we are as well able to decide it as was the District Judge, because all the important testimony was taken by deposition. The master of the barge testified that the tow left Bath at about 6:30 a. m., whereas the master of the tug put the start an hour later. We adopt the account given by the master of the barge because he entered the times of the various occurrences in his log, and because the time he gives for starting makes the water lower when the barge struck and so accounts better for the accident. The master of the barge thought the tide must have been ebb at the time the tow started because the barge was lying at anchor head upstream. This is not a conclusive reason. In rivers the current continues to run down on top long after the tide has begun to rise at the bottom. See our opinion in McWilliams v. The Bangor, 212 Fed. 706, 128 C. C. A. ——. All parties agree upon the material fact that the tide was rising flood at the time of the accident.

[4] There was no indication of any obstruction on the government chart which showed water not less than 18 feet at mean low water all around where the barge struck. Another error in the chart was that it showed the black buoy at a point south and more than 200 feet to the westward of where it actually was. The proof is that it was moved some time early in 1910. The result was that the apparent channel was greatly reduced, and that the government ranges ran very close to the buoy. It appears, however, that navigators of the river rely upon the ranges and buoys without much use of the government chart.

We think it is quite obvious that if the obstruction had been known to navigators no search would have been made for it after the accident, nor any difficulty encountered in finding it. In the summer or early fall of 1911, the government sent an engineer to locate it, who was unable to do so by sounding because he found nothing under 18 feet of water between half ebb and half flood. In August of 1912 he was sent again, and by sweeping the vicinity by ranges laid out from the shore he located, opposite and east of the buoy, a projecting ledge rectangular in shape 50 by 60 feet in a general northeast and southwest direction, having on the west edge a narrow strip with only 13 feet 5 inches of water at mean low water for a distance of 10 feet, running in a direction up and down the channel. This is the rock upon which all parties agree that the barge fetched up, and it was subsequently blown up by the government.

The respondent called a number of local navigators engaged in towing on the river who said they did not know of this obstruction. If it had been generally known, their testimony must have been deliberately false. On the other hand, the libelant called four or five wit-

nesses who testified to the location of rocks with reference to the black buoy as originally placed, none of which could have been the rock in question. One witness, Dingley, who testified November 12, 1912, in the same manner, did also say that he knew of this particular ledge. As this was after the accident, the government survey and the general talk on the subject among the rivermen, we are satisfied that he derived whatever information he had subsequent to the accident. The testimony convinces us that the barge struck on an uncharted and unknown obstruction, and that the tug is without fault.

The decree is reversed, with costs.