EDWARD J. BARTON LIGHTERAGE CO., Inc., v. DAVIS, Director General.
THE EDWARD L. FULLER.

(Circuit Court of Appeals, Second Circuit. December 2, 1924.)

Nos. 80, 81.

Collision ⬡102—Both tugs held at fault for collision occurring in darkness of early morning, while simultaneously leaving adjoining slips.

Both tugs held at fault for collision occurring in the darkness of early morning, as both left their respective slips, separated by intervening pier, one for not maintaining a lookout, and the other for failure to observe movement of tug first leaving its slip, failure to blow proper whistle, and lack of vigilance, both vessels proceeding at five miles an hour, when signals of nearby vessel should have apprised a careful navigator of proximity of trouble.

Appeals from the District Court of the United States for the Southern District of New York.

Libel by the Edward J. Barton Lighterage Company, Inc., against James C. Davis, as Director General, and manager of P. R. R. Tug 27, and cross-libel by the Director General against the steam tug Edward L. Fuller, her engines, etc., the Edward J. Barton Lighterage Company, Inc., claimant. Decree for libelant, and the Director General appeals. Decree modified, so as to divide damages.

Barton Company, owner of tug Fuller, sued the Director General as manager of P. R. R. tug 27, and the Director filed a cross-libel, in respect of a collision occurring as follows:

In the early morning of a winter day, when navigating vessels were still showing their running lights, the No. 27 was in a slip of the P. R. R. Terminal at Jersey City, and the Fuller in the next southerly slip. Between them was a pier, not covered, but containing railway cars. Observers in the pilot house of even a small tug could see over the car tops. There was nothing in the weather hindering navigation, hearing, or vision.

At nearly the same time, but No. 27 certainly the first by a little, both tugs left their slips. No. 27 backed out and started southerly under a starboard helm. The space for the maneuver was somewhat restricted by two other tugs, each with a car float alongside, a short distance outside the pier headline, and she had to clear, at the end of the pier between her slip and that of the Fuller, two vessels lying abreast at the pier end. As an obstruction to navigation this pier was prolonged by the beam of two vessels.

By full evidence it is shown that No. 27 blew a long slip whistle, when she started to round to, exchanged a signal of one whistle with one of the tugs with car floats, and that tug "blew for the bridges"; i. e., to announce that she wished to put her float at the "bridge" in the slip end. No. 27 was clearing the vessels at the pier end between the two slips by "25 or 30 feet" when the Fuller was seen emerging head on from her slip, and not over 150 feet away. Collision was then inevitable, for each tug was making about 5 miles an hour, and although No. 27 "hooked up" and Fuller reversed, the latter's stem struck No. 27's starboard side.

The Fuller swore that she blew a slip whistle of variously estimated length, but

by her own testimony ceased blowing before she reached the two vessels lying at the intervening pier end. No one on board the Fuller heard any whistle from either No. 27 or the tug that blew "for the bridges." The terminal docks where this all happened are very busy and especially frequented by tugs. The No. 27 had no lookout forward; there was one on the Fuller, but he could see nothing until clear of the vessels at the pier end, and he heard nothing until collision was imminent, when No. 27 blew two whistles.

The court below found No. 27 solely at fault, the Director General appealed.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for appellant.

Macklin, Brown & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellee.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). The situation above depicted is very familiar in this crowded harbor, yet always dangerous and demanding a care certainly not here accorded it by either vessel. We agree with the court below that No. 27 was at fault, for not maintaining a lookout. The Transfer No. 8, 211. F. 965, 128 C. C. A. 463. Considering, however, the darkness of the hour, we are not inclined to stress the 27's failure to see the Fuller across the pier, while, as for seeing her staff light, that would hardly give indication of what she was doing.

The Fuller we find at fault also. Whatever force there is in failure to see across the pier applies more injuriously to the Fuller than the 27, for the latter was much the larger tug, and one with far more freeboard. Again, Fuller did not blow a proper slip whistle. There is no positive rule as to the length of such a whistle; it depends on circumstances. The Bangor, 212 F. 706, 129 C. C. A. 316. In this instance the vessels at the intervening pier end, one of them light and high out of the water, were a greater obstruction to vision than the pier itself, and Fuller should have heralded her coming until clear of those vessels, especially when proceeding at so considerable a speed for leaving a slip in the dark as 5 miles an hour.

Further, Fuller was at fault for inattention. She had a man forward as lookout, but the duty of looking out is but a part of the duty of being vigilant, and no one on board the Fuller was sufficiently alert to hear any part of a rather unusual array of whistles, any of which would have apprised a careful navigator of the probability of trouble ahead; for every one of them told of a vessel that could not be seen until the slip was cleared, and near by the place that Fuller must occupy at the moment of clearance.

Decree modified, so as to divide damages; costs below to be also divided. Costs of this court to appellant.