## THE K. WHITTELSEY.

## THE PERSEVERANCE.

### No. 297.

Circuit Court of Appeals, Second Circuit.

April 10, 1933.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and A. Howard Neely, both of New York City, of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and Henry P. Elliott, of New York City, of counsel), for appellees The Perseverance and another.

Foley & Martin, of New York City, for appellees C. F. Harms Co. and Cleary Bros., Inc.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The tug Perseverance, with the tug George W. Pratt as helper, was south bound on October 23, 1931, with a tow in the Hudson river. A tow in charge of the tug K. Whittelsey, helped by the tug Hustler, was north bound. They met near New Baltimore about twenty miles south of Albany.

At the time and place where they met, the government was dredging a 300-foot chan-

nel to a depth of 27 feet to permit vessels of draft requiring a channel that deep to go up to Albany. The Hudson is about 900 feet wide there from shore to shore; the portion of the new channel then under construction was about 1,700 feet long and was a little nearer the eastern than the western bank. The dredge Boston was anchored with a scow nearby about 150 feet from the southerly end of the area being dredged and in a position which left about 160 feet of the dredged channel easterly of the Boston and the scow. Some thousand feet to the north, the drill boat Rack-a-Rock was anchored about forty feet inside the westerly line of the dredged channel. The northerly limit of the worked area was marked by a green and white buoy and the easterly side of the channel was marked by buoys. Outside these buoys and between them and the easterly bank of the river was ample water for the Whittelsey and its tow. This fact was known at the time to the captain of that tug according to his own testimony at the trial.

As the Perseverance approached the northerly end of the area being worked, she blew two blasts to the Whittelsey which that tug neither heard nor answered. Later when the tugs were still a safe distance from each other they exchanged one-blast signals, and the Whittelsey hauled to starboard to put herself and tow well over to easterly side of the dredged channel. The Perseverance kept close to her starboard, or the westerly side of that channel, and, had her tow tailed straight behind, there would have been room enough within the dredged channel for the tows to pass safely.

The Perseverance had a hawser tow of twelve loaded canal boats in four tiers of three boats each. The light scow Saturn was spiked on the port side of the third tier and the scow Cleary No. 68, also light, on the same side of the fourth tier. A scow loaded with stone was astern of the port canal boat in the last tier. This made her tow about 800 feet long. Its width in the first two tiers was about 70 feet and in the next two about 103 feet. The Perseverance had a beam of 31 feet. The Pratt, with a beam of 17½ feet, was alongside the second tier on the starboard side to keep the tow away from the drill boat and dredge.

The Whittelsey had three loaded oil barges, O. J. No. 15, O. J. No. 18, and O. J. No. 21, in tandem on a bridle hawser. She had a 22-foot beam, and the Hustler with a 20-foot beam was lashed to her starboard side but was not steering. The length of the Whit-

telsey and her tow was about 745 feet, and the extreme width 43 feet. She was making about three miles per hour over the ground, and the Perseverance was coming down the river at about the same speed. When the tugs approached each other, the tow of the Perseverance had swung over somewhat to the east, but not enough to have interfered with the agreed passing had the Whittelsey been willing to go but a little more to her starboard where, though she would have been just to the east of the channel being dredged for vessels of greater draft, her captain knew there was ample water for herself and her tow.

What happened at about 9:05 a. m. is shown by the following quotation from the opinion of the District Judge:

"The tugs passed each other, and then a collision between the tows was seen to be probable. The Whittelsey blew an alarm and turned partially to starboard, and of course her tow swung a little to port, and then the Whittelsey stopped her engines; the port corner of her first oil barge came in contact with the port bow of the Saturn, the first light scow spiked on the port side of the Perseverance tow, about 6 feet inboard. The Perseverance had been proceeding under one bell, slow, for a brief interval, and stopped her engines just before the collision.

"The Whittelsey did not strike any boat in the Perseverance tow, but the stone barge was cast loose by the impact of the second spiked scow, which was forced astern by the Saturn, and the stone scow drifted down alongside the Whittelsey. It will be seen that the place of impact was about 320 feet astern of the Perseverance, and 150 feet astern of the Whittelsey. As the latter did not strike any portion of the southbound tow, the latter could not have been, as to its fourth tier, or the stone scow astern, in the course of the Whittelsey. Thus the sheer of the south-bound tow is shown not to have been so considerable as to point to fault on the part of the Perseverance in continuing on her course after exchanging the 1-blast signals."

The Saturn, Cleary No. 68, and O. J. No. 15 were all injured.

The owner of the Saturn, in one action, sued the Perseverance and the Cornell Steamboat Company, her owner, and the Whittelsey and the Oil Transfer Corporation, her owner. The Cornell Steamboat Company answered, claimed the Perseverance, and impleaded the Hustler. The Oil Transfer Corporation answered, claimed the Whittelsey.

and impleaded the Pratt. It also claimed the Hustler, and the Cornell Company claimed the Pratt.

In a second action, the owner of Cleary No. 68 sued, as did the owner of the Saturn, and the same parties and vessels were brought into the case in the same way.

In a third action, the Oil Transfer Corporation, the owner of the O. J. No. 15, filed a libel against the tugs Perseverance and George W. Pratt, and they were claimed by the Cornell Steamboat Company. These three causes were consolidated for hearing. The tugs Perseverance and Pratt were exonerated; the libels against them and their owner were dismissed; and the tugs Whittelsey and Hustler held solely at fault for the collision.

■ On the facts it is plain enough that the cause of the collision was neither the width nor the tailing to port of the south-bound tow but the persistence with which the north-bound tow clung to the deep channel. While this was a channel when speaking with reference to vessels of draft sufficient to need it, it was only a deeper section of the river so far as this north-bound tow was concerned. Granted, if the expanse of navigable water to the east is ignored, that the tow of the Perseverance was too far to the eastward to let the north-bound tow pass, it must be remembered that to so divide the channel of the river in respect to these tows is highly artificial and unreal. The channel for them was the Hudson river at that point from the area blocked by the dredging operations nearly to its eastern bank. So understood, the Perseverance with her tow was well on the westerly side of the channel, and the collision occurred in her own water. The cause of it was clearly the fault of the upbound tow in not hauling over to permit the port to port passing agreed to. It is idle to try to justify the failure of the captain of the Whittelsey to do so, since he testified that there was water enough outside the dredged channel and he was bound to know that anyway. Lehigh Valley Transportation Co. v. Towage Co. (C. C. A.) 212 F. 708; Davidson S. S. Co. v. United States, 205 U. S. 187, 27 S. Ct. 480, 51 L. Ed. 764; Atlee v. Northwestern Union Packet Co., 21 Wall. 389, 22 L. Ed. 619.

■ The Hustler was lashed alongside the Whittelsey, and both tugs provided the motive power. Though the master of the Whittelsey alone did the steering, the master of the Hustler acquiesced and submitted his boat entirely to the control of the Whittelsey's master in that respect. The fault lay in steering, and the Hustler participated in that fault. So both vessels were liable in rem. The Anthracite (C. C. A.) 168 F. 693.

Decree affirmed.