**THE BARCLAY.**

**THE B. Y. NO. 9.**

**THE ARIOSA.**

**THE NOS. 17 AND 18.**

**THE PANTHER.**

**THE JOHN RUGGE.**

**THE PURE OIL NO. 10.**

**STANDARD DREDGING CO. v. HENRY DU BOIS SONS & CO. et al.**

District Court, S. D. New York.
July 5, 1934.
Aug. 7, 1934.

Barry, Wainwright, Thacher & Symmers, of New York City (Earle Farwell and Joseph M. Brush, both of New York City, of counsel), for Dumper Scow No. 17.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine, of New York City, of counsel), for libelant.

Hatch & Wolfe, of New York City (Carver Wolfe, of New York City, of counsel), for Pure Oil Co.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and Richard Shaw, both of New York City, of counsel), for respondent.

Tompkins, Boal & Tompkins, of New York City (Arthur M. Boal, of New York City, of counsel), for respondent Daniel Roe Towing & Transp. Co., Inc.

Lynch & Hagen, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for claimant-impleaded Dalzell.

KNOX, District Judge.

The three suits, growing out of the same subject-matter, were consolidated for the purpose of trial, the parties reserving the right to enter separate decrees in each action.

Standard Dredging Company, the original libelant, seeks to recover damages for injuries sustained by the dredge Barclay, and a dump scow B. Y. No. 9, moored alongside the dredge, as a result of having been struck by a tow of the tug Ariosa.

The tow of the Ariosa was composed of dump scows Nos. 17 and 18, owned by Henry Du Bois Company. The No. 17 was damaged. The Du Bois Company charges fault therefor against the steamtugs John Rugge and Panther which had Pure Oil Barge No. 10 in tow, and which collided with the scows. Claimants of the latter impleaded Daniel Roe Towing & Transportation Company, Inc., alleging that a tow of this company in charge of the Grace Roe contributed to the accidents.

The oil barge having also been damaged, her owner charges the tugs John Rugge and Panther with responsibility, and their claimants, in turn, seek to pass the liability to the Ariosa and to the tug Grace Roe, and her owner.

The accident giving rise to the collision occurred at about 9:30 o'clock upon the evening of April 13, 1929.

The weather was clear, the wind light, and the tide flood. As nearly as can be made out, the other relevant facts are these:

The dredge Barclay was spudded at the New Jersey edge of the channel of the Kill von Kull, and close by Red Buoy S-4 and somewhat to the east of Bergen Point, her stern to the east. The dumper scow B. Y. No. 9 lay along her port side. The channel of the Kills is dredged at this point for a width of about 400 feet. For a further distance of 150 feet there is a depth of water over which light tows may safely pass.

The Ariosa with the dump scows No. 17 and No. 18, both light, made fast in tandem formation on her starboard side, was on her way from the dumping grounds, bound for Kearney, N. J. No. 17 was the head scow, and its forward end projected about 90 feet ahead of the tug's stem. When this tow was somewhere between Bergen Point ferry and the Port Johnson Coal Dock, it overhauled and passed the Pure Oil Barge No. 10, in charge of the tugs John Rugge and Panther, to starboard and probably 150 feet off. The John Rugge was made fast near the port stern of the oil barge, and the Panther was opposite her to starboard. The bow of the barge was 100 feet or more ahead of the tugs. The Ariosa passed the oil barge without consent, or any warning of her action. Having two light boats on her starboard side, the tug tended to cant towards the center of the channel. It may be remarked also that the tide has a "set" towards the New Jersey shore.

Shortly after passing the oil barge, the master of the Ariosa saw the staff lights of a large hawser tow going eastwardly near the Staten Island shore, and about abreast of the dredge. This tow turned out to be the Wyomissing pulling 20 loaded coal boats, made in a 6-tier flotilla. The John Rugge blew one whistle to the Wyomissing. Receiving a reply of one blast, the Rugge which had been proceeding at about 3 miles through the water, and upon the flood tide, slowed down to one bell. As she got abreast of Bergen Point ferry, her master observed a hawser tandem tow of two light deck scows, in charge of the Grace Roe, proceeding eastwardly, behind and to the northward of the Wyomissing's tow. The scows of the Grace Roe were swinging somewhat to the northward, thus narrowing the space within which the Ariosa had to travel in order to avoid the Roe boats and the dredge. The Ariosa blew one blast to the Grace Roe, and, upon receiving a similar reply, blew an alarm. It was the Ariosa's hope that the Roe tow would quickly change its course and "get over to the Reading coal tow." The hope not being immediately realized, the Ariosa blew another signal of one blast followed by an alarm. She then began to drift waiting for an opening through which a passing might be made. While thus engaged, the Ariosa's master heard a two-whistle signal from the John Rugge. Looking astern, he found the oil barge tow bearing down upon him, and but 600 or 700 feet away. The Ariosa then blew an alarm to the boats astern. As she did so, her master thought he saw an opening astern of the Grace Roe tow, and proceeded ahead under one bell.

The Ariosa claims that as this maneuver was executed, the oil barge passed to port, and that, in doing so, the Panther struck the Ariosa a glancing blow. The effect of this, so it is said, was to part the outside corner lines of the scows in tow of the Ariosa. That caused the No. 17 to swing across the Ariosa's bow. While in this position, it was run into by the Pure Oil No. 10, the fluke of the latter's starboard anchor impaling the bow. In addition, claim is made that the impact of the Panther forced the scow No. 18 into the B. Y. No. 9.

From the report of the Ariosa's master, made to the local steamboat inspectors on the day following the accident, it would appear doubtful if the contact between the Ariosa and the Panther had anything to do with the collisions leading to the resultant injuries to the several boats. That report says: "As my second scow was sliding clear of the dumper B. Y. 9 which was made fast to the Barclay's port side, my head scow D. 17 was struck by the oil barge. * * * One of the flukes of the barge's anchor rammed into the side of the D. 17. * * * The force of the collision parted the doubled up 5-1/2" new head and stern line. The tug Panther which was on the tanker's starboard side, struck the Ariosa a glancing blow on the port side amidships, as the anchor was hooked into D. 17 we drifted both tows to Shooters Island where we succeeded in freeing the anchor from the scow."

The version of the affair given by the masters of the John Rugge and Panther is that shortly after the Ariosa tow passed the oil barge (and when, according to the master of the Panther, the Ariosa was from a quarter to a half mile ahead), the master of the Rugge heard a one-blast signal followed by an alarm, but noticed no reply. Paying but slight, if any, attention to these signals, he next saw the Ariosa's tow swinging across the channel near by the dredge, and about 600 feet ahead of the oil barge. The John Rugge then blew two blasts on her whistle to indicate that she was about to pass the Ariosa. The Ariosa responded with an alarm. The Rugge gave a like signal and went back on her engines. The Panther did likewise. In a moment more the oil barge had struck the D. 17. The John Rugge's master does not believe that there was a subsequent contact by the Ariosa's tow with the scow which hung onto the dredge. In other words, it is his theory that the Ariosa's tow had come into contact with the dredge's scow before the oil barge hit the D. 17. This account of the circumstances receives some corroboration from the testimony of the captain of the dredge. He came on deck when he heard the alarm of the tugs. He then saw the Ariosa and her scows about 100 feet away "trying to back up at the time I seen her, but the tide carried her down." Her tow then hit the corner of the scow, inflicting damage, and immediately struck the dredge.

This collision was sufficient to break the lines between the Ariosa's scows. Its effect would be to throw the head scow, already angling into the channel, more broadly into the stream and into the course of the oil barge. In my opinion this is probably what occurred, and it will be my finding.

Upon the foregoing facts, where shall the fault be placed? Certainly, I think, the Grace Roe cannot be held to be blameworthy. The way in which she was handling her tow may have given a bit of embarrassment to the Ariosa. She was visible to all the other vessels, and had the Ariosa herself not crowded into the situation, and if, after doing so, she had taken the Roe tow into proper account, her own difficulties might have been avoided. Indeed, upon the trial, the advocate for libelants conceded that the Roe tow could not be held at fault. Hence, the Grace Roe and her owners are exonerated.

As between the Standard Dredging Company and the Ariosa, and the Panther and John Rugge, there can be but little question that the Ariosa is solely to blame for damages sustained by the dredge and her scow. By running into anchored vessels, she is presumptively at fault. The Orion (C. C. A.) 26 F.(2d) 603, 1928 A. M. C. 1044; The Rotherfield (D. C.) 123 F. 460. But, apart from such inference, the evidence amply and affirmatively establishes her fault. Being unable to handle her tow effectively, and having deliberately run into a situation in a narrow channel which might well have been anticipated, she drifted into the dredge and the scow. For the damages thus occasioned, she and her owners must respond.

As between the owner of the D. 17, the Pure Oil No. 10, and the John Rugge and Panther, I think these tugs should be held. While the Ariosa may have been at fault in passing the oil barge tow when and where she did, such passing was not the proximate cause of the collision between the oil barge and the D. 17. The Ariosa had cleared the oil barge, and the master of the John Rugge, had he taken seasonable notice of the difficulties which had come upon the Ariosa, might have escaped becoming party to them. He knew of the presence of the dredge, he had noted the course of the Wyomissing's tow, and he observed also, upon hearing the Ariosa blow one blast to the Grace Roe, that its scows were tailing across the channel. He likewise heard the Ariosa's alarm. Aware of all this and realizing, as he must have done, the narrowness of the area in which maneuvers must be carried out, he continued in his course for four minutes, and then proceeded to give notice to the Ariosa that he was about to pass her to port. Within twenty seconds thereafter he was put to the necessity of blowing an alarm, because a safe passing of the Ariosa was impossible. As bearing upon the matter, it seems proper to quote the testimony of the captain of the John Rugge.

"Q. When you heard the alarms, you knew there was congestion did you not? A. I knowed they blowed the alarm for something.

"Q. So that you knew there was some congestion ahead? A. Yes.

"Q. Otherwise she would not blow the alarm? A. No, I guess not.

"Q. And it was about five minutes after that, you blew your two blast (passing) signal? A. I do not know how long, just about five minutes. * * *

"The Court: Could you have held back there? A. Yes.

"The Court: I say, could you have held back when you saw these boats getting down ahead of you there? A. I could have stopped and backed.

"The Court: You could? A. But the way it looked to me it was clear there.

"The Court: Did you go on after you heard the alarm; did you proceed after you heard the Ariosa blow the alarm? A. I proceeded to see the Ariosa swinging across the channel.

"The Court: After you heard the alarm from the Ariosa, how many alarm whistles did you hear blown? A: One.

"The Court: And did you continue to proceed after you heard that whistle? A. After I heard the alarm, yes.

"The Court: Could you see at that time what was taking place? A. No sir. * * *

"Q. When did you see the Roe tow athwart the channel? A. Right after the Ariosa blowed one whistle—the alarm, I seen her pulling in toward Staten Island.

"Q. And at that time they were swinging in towards the channel? A. Swinging in a little bit towards the channel.

"Q. Then you blew a two blast whistle to the Ariosa? * * *

"Q. Now your two blast whistle was to notify the Ariosa that you intended to, in turn, pass her on her port side, is that correct? A. I blowed them that whistle more to indicate that I was coming, because then the Ariosa was swinging towards the channel, and right after that I blowed the alarm, because the Ariosa continued swinging to-

484

wards the channel, and I knowed I could not pass."

Under the conditions revealed by this testimony, I think the John Rugge is at fault for what then followed. Any wrong which may properly be charged against the Ariosa for passing the oil barge did not make her an outlaw. The Syosset (C. C. A. 2d, June 18, 1934), 71 F.(2d) 666. The neglect and misconduct of the John Rugge was the proximate occasion for the injury sustained by the D. 17 and the oil barge. The Portia (C. C. A.) 64 F. 811. She had been passed by the Ariosa considerably more than five minutes previously, and the latter was far enough ahead to require the John Rugge to navigate as the burdened vessel. As a consequence, she must bear the liability which attached itself to her. See Mary E. Morse (D. C.) 179 F. 945.

As to the duty resting upon a navigator who has been subjected to a violation of rules by another, see The Quogue (C. C. A. 2d, March 2, 1931) 47 F.(2d) 873.

Notwithstanding the fact that the Panther was acting merely as a helper, she was under the direction and control of the master of the John Rugge, and, in carrying out his orders, she participated in the fault that is attributable to his tug. Therefore, under the authority of The Anthracite (C. C. A.) 168 F. 693, and The K. Whittelsey (C. C. A.) 64 F.(2d) 340, she must share responsibility with the John Rugge.