**UTILITY SERVICE CORPORATION**

v.

**HILLMAN TRANSPORTATION COM-PANY, Appellant.**

**Harry ZUBIK**

v.

**HILLMAN TRANSPORTATION COM-PANY, Appellant.**

Nos. 12080, 12081.

United States Court of Appeals Third Circuit.

Argued Feb. 19, 1957.

Decided May 8, 1957.

Clyde A. Armstrong, Pittsburgh, Pa. (Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for Hillman Transp. Co.

Harland I. Casteel, Pittsburgh, Pa. (Campbell, Houck & Thomas, Pittsburgh, Pa., on the brief), proctors for Utility Service Corp., and Harry Zubik, appellees.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

The Ohio River is formed by the confluence of the Allegheny and Monongahela Rivers below the downtown area of the city of Pittsburgh. A maritime collision occurring in the Ohio River at a point 2.2 miles below this junction provides the basis for these appeals in admiralty.

The Utility Service Corporation, one of the libellants, contracted with the Duquesne Light Company to lay a cable in a trench which it was to excavate in the bed of the Ohio River. At the area of this work, the river flows generally from east to west and is divided by Brunots Island into two channels approximately equal in width. The cable was to extend from the north shore of the Ohio River in a southerly direction to Brunots Island. The events important to this appeal are concerned primarily with that part of the river which flows to the north of Brunots Island since that is the sailing line for most of the river's navigation.

The Utility Service Corporation leased certain equipment, including a sand barge and a derrick boat, from Harry C. Zubik, a general river contractor and the other libellant here.

The collision in question occurred on December 30, 1954, at 12:10 a. m. The equipment used by Utility in the excavation was located at this time approximately in the middle of the river between Brunots Island and the north shore. The tow boat M/V Mary Lee Hillman, under the exclusive control of the respondent-appellant Hillman Transportation Company, was proceeding downriver with a tow of six loaded coal barges. Because of a bend in the river, the equipment, although adequately lighted, was not visible to the Mary Lee Hillman beyond a distance of approximately a half mile. When the Hillman vessel had reached

this point the tow boat Vulcan, owned by the Jones and Laughlin Steel Corporation, was proceeding with its tow upriver, and although somewhat below the equipment, it was obvious that she had committed herself to that part of the channel between the equipment and the north shore. She blew one blast, indicating a port-to-port passage. The pilot of the Mary Lee Hillman perceived danger in such a course and immediately nullified the Vulcan's signal with the accustomed four short blasts. Then the Hillman boat blew two blasts, indicating a starboard-to-starboard passage; this was to be effected by passing between the equipment and the island.

As she passed beyond the eastern end of the island and to a point 1,000 feet above the equipment, she was caught in a crosscurrent moving from the island toward the equipment. She then reversed her engines, preventing a head-on collision, but the current was strong enough to ease her into the sand barge and derrick boat, causing damage to both pieces of equipment.

The district court concluded that the sole cause of the collision was the negligent navigation of the Mary Lee Hillman and entered judgments in favor of Utility in the sum of $639.13, with interest from December 30, 1954, and in favor of Zubik in the sum of $13,951, also with interest from December 30, 1954. D.C. W.D.Pa.1956, 142 F.Supp. 473. It is from these judgments that the present appeals are taken.

The appellant's principal contentions are: (1) The crosscurrent which caused the collision was unprecedented, and therefore appellant's pilot was not negligent in failing to foresee its effects; (2) Zubik was negligent in not removing the derrick boat and sand barge from the middle of the channel; (3) evidence as to the damages was vague and indefinite; and (4) in any event, interest should not have been allowed on the Zubik judgment as he had not actually expended money to repair the damages.

Under the rule of McAllister v. United States, 1954, 348 U.S. 19, 75 S.

Ct. 6, 99 L.Ed. 20, we may not set aside the judgments of the district court unless they are clearly erroneous, that is, unless a review of the entire record leaves us with the firm conviction that a mistake has been committed.

The current in the Ohio River at the point of collision is normally one-half to one and one-half miles per hour, but on the night in question it was increased to five or six miles per hour by the opening of the gates at the Emsworth Dam, which was situated below the excavating equipment. From the testimony in the record, the trial court could very well have concluded that when the current of the river is normal, it is deflected slightly both to the north and to the south as it strikes Brunots Island. When the current is increased these deflections become noticeable crosscurrents. They increase in velocity and force as the rate of flow of the river increases. The opening of the dam, which is not an unusual occurrence, naturally increases the rate of flow, and this effect is readily noticeable to experienced mariners.

The pilot of the Mary Lee Hillman testified that he had extensive navigating experience, having been a river pilot for twenty-three years. He was aware of crosscurrents caused by Brunots Island when the main current of the river increased. He testified, however, that the crosscurrent which caused the collision was unknown to him:

"* * * I knew it was safe to go down on the left side, because of previously I had been down there, to the left side of the derrick boat. So I intended to go down there, and I overcame the current at the head of the island. But a peculiar situation exists there, that I did not know existed, *because I had no previous experience of going that close to that island, in current.*" (Emphasis supplied.)

And again:

"A. No, sir. We had no occasion of being over there when we had current. I did have occasion to be over there when there was no cur-

rent, previous to this time. I passed that same equipment on that side. But there was no current at that time."

Evidence that appellant's pilot was not aware of the crosscurrent which caused the collision simply because he had never before sailed so close to the island in swift current is certainly not tantamount to evidence that this crosscurrent was not normally present when the river was high.

■ Appellant's pilot should have been aware of the crosscurrent, for the law imposes a duty upon him to be "constantly informed of changes in the current of the river" and the "changes made by the hand of man or the action of the elements in the path of his vessel." Davidson Steamship Co. v. United States, 1907, 205 U.S. 187, 194, 27 S.Ct. 480, 483, 51 L.Ed. 764. Rivers are not immutable. Rains swell their volume; the opening of dams increase their current; deposits of silt may change their depths; wrecks may obstruct them. Where the river pilot has the means of obtaining information concerning these changes, he is deemed in law to know them. If he tests the danger of increased current at a place where his common sense and nature's physical laws would tell him that a crosscurrent would embarrass his progress, he does so at his own risk. In The Severance, 4 Cir., 1945, 152 F.2d 916, 919–920, it was said:

"From this testimony, and further evidence in the record, we feel that the condition of the river, at the place and time of the accident, due to situations arising from the freshet, offers the most plausible explanation of the sudden sheer taken by the 'Severance.'

"As to the liability of the navigator under such circumstances, the following cases are highly informative. The Webb, 14 Wall. 406, 81 U.S. 406, 20 L.Ed. 774 (tug held liable for damages to her tow by stranding, when the tug claimed the stranding was due to unexpected currents) * * *.

"We must presume here that Captain Dosher either knew, or by the exercise of reasonable care should have known, of the prevailing conditions on the Cape Fear River. By undertaking to act as pilot of the 'Severance,' he promised the skill of his art. Spondet peritiam artis."

■ When the Mary Lee Hillman rounded the bend in the river and saw the Vulcan approach and the position of the equipment, there is evidence that she could have stopped until the Vulcan passed, and then could have proceeded safely down the clear channel to the right. Rather than do this, appellant's pilot elected to risk passage between the island and the equipment, a course he had never before taken in swift water. This, we think, was negligence.

■ It is appellant's second contention that Zubik was negligent in keeping the equipment in the river channel during the swift current, since this was in violation of 33 U.S.C. § 409, relating to vessels obstructing navigable waters. To our knowledge, this statute was not presented for the district court's consideration, and is mentioned for the first time here. There was evidence that the excavating work was authorized by a permit issued by the United States Army Corps of Engineers. There also was evidence that it was impracticable to move the equipment to shore. Even if we assume, however, that the owners of the equipment were in violation of the statute, this alone would not make them liable. A vessel obstructing a channel is not thereby rendered an outlaw for purposes of a civil suit, and other vessels must exercise care for her safety. See The Lady of Gaspe, 2 Cir., 1921, 276 F. 900, 902; Dahlmer v. Bay State Dredging & Contracting Co., 1 Cir., 1928, 26 F.2d 603, 605; The Mattie, D.C.E.D.N.Y. 1924, 5 F.2d 998, affirmed, 2 Cir., 1925, 5 F.2d 1001; 15 C.J.S. Collision § 132 (1939).

The damage to the equipment and the resulting loss of rental are the principal items which make up the awards. At the trial, a question was raised as to the testimony of a witness for Zubik concerning an appraisal of damage to the equipment because of an apparent lack of showing that the appraisal had been limited to the damage caused by this collision. This question is again raised before us. The record discloses, however, that Zubik himself testified that he had instructed the appraiser to so limit the survey. The evidence as to loss of rental, although not perfectly free from inconsistencies, we think was substantial enough for the findings on this score.

We agree with appellant, however, that the district court should not have allowed interest from the date of collision on the amount of estimated repairs for which no money was expended. Except for the replacement of one broken spud at the cost of $882, no other repairs were made to the equipment, and the same equipment was thereafter used. Where, as here, a vessel is damaged but not put out of service interest is generally allowed only from the date of the expenditure for repairs, and not from the date of the collision. The award of interest is made as compensation for the deprivation of the use of money or property. Here there was no such deprivation. The Manhattan, D.C.E.D.Pa.1935, 10 F.Supp. 45, 49, affirmed, 3 Cir., 1936, 85 F.2d 427, certiorari denied, United States v. The Bessemer, 1937, 300 U.S. 654, 57 S.Ct. 432, 81 L.Ed. 864. See also The Wright, 2 Cir., 1940, 109 F.2d 699; The Hygrade No. 24 v. The Dynamic, 2 Cir., 1956, 233 F.2d 444.

The brief of the appellees is not in conformity with Rule 24(4) of this court, 28 U.S.C. Appellees therefore will be denied recovery of their costs on this appeal.

The judgment in No. 12,080 will be affirmed. The judgment in No. 12,081, as modified in conformity with this opinion, will be affirmed.