## THE WELSH.

## THE ROBERT PARSONS.

(Circuit Court of Appeals, Second Circuit. November 16, 1921.)

No. 25.

**Collision ☞95(1)—Both tugs held at fault for collision in Hudson river.**

As respects damages from collision at night in the Hudson river, off Hoboken, between two tugs and their tows, due to misunderstanding of signals or failure to hear signals until the boats and their tows were too close for an exchange of signals to pass safely, where one tug admitted a share of liability, and it appeared that on the other tug the deckhand, who was charged with the duty of lookout, was sitting in the pilot house at the time of collision, and therefore had no better opportunity for see-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing the lights of the other tug than did the master who was navigating the boat, and that the collision could have been avoided, had efficient lookout been maintained, *held*, that both tugs were at fault.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the New York & New Jersey Transportation Company against the steam tug Welsh, her engines, etc., the Cornell Steamboat Company, claimant, and the steam tug Robert Parsons, her engines, etc., the Erie Railroad Company, claimant. Decree for libelant against the steam tug Robert Parsons, and claimant Erie Railroad Company appeals. Modified.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Robert S. Erskine, of New York City, of counsel), for appellee Welsh.

Macklin, Brown, Purdy & Van Wyck, of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The New York & New Jersey Transportation Company owned the coal boat the H. M. Lane. On the 23d of January, 1917, the H. M. Lane was taken in tow on the starboard side of the steam tug Welsh at the foot of Washington street, Jersey City, and proceeded for Weehawken. The steam tug Robert Parsons was on a voyage from Forty-Ninth street, North River, Manhattan, with a car float made fast on her port side and was bound for Pavonia Ferry, Erie Railroad, Jersey City. At the time of the collision herein referred to, which occurred at about 6 o'clock in the evening, the tide was flood. The master of the Welsh testified that he was proceeding up the river about 100 feet off the end of the piers and was about off Eighth street, Hoboken, when he observed the green light of the Parsons about 300 feet off on the starboard hand. At this time he gave a signal of two whistles to the Parsons and received no answering signals. After such two whistles, he put his wheel to starboard and changed his course to port about two points. Shortly thereafter he saw the red light of the Parsons. Again he gave two whistles and stopped, and reversed the engines of the Welsh. He says that, when he first saw the red light of the Parsons, the Welsh was then about at Ninth street and that the collision occurred off Tenth street. The master of the Parsons says, on the other hand, that the collision occurred off Thirteenth street, Hoboken; that, after crossing the Hudson river, he straightened down on a course of about 300 feet off the end of the pier, and then observed the two side lights of the Welsh, thereupon giving a one-whistle signal; and that at this time the Parsons was about at Fourteenth street. He says that, after giving one whistle to the Welsh and porting his wheel, he heard a two-whistle signal from the Welsh, whereupon the Parsons reversed her engines. After this alarm signals were given by each tug, and then while the

276 F.—58

Parsons and her tow were swinging to starboard, and the Welsh and her tow swinging to port, the boat Lane came in collision with the car-float.

On this appeal, the appellant does not ask to be exonerated from blame, but insists that the Welsh was also at fault, and should share the damages with the appellant. It is clearly established that the deckhand on the Welsh, Raine, who was charged with the duty of a lookout, was sitting in the pilot house at the time of the collision and prior thereto. The master of the Welsh, who was navigating with the tow upon the starboard side, was endeavoring to perform the duties of navigator, wheelsman and pilot. The night was clear, and no good reason is advanced why those in charge of the Welsh could not see the Parsons at a greater distance off than the testimony of the master shows the Parsons was seen. The deckhand, in the pilot house with the master, had no better advantage of seeing the lights of the Parsons than did the master. If an efficient lookout had been at his post, performing his duty as the law requires, the lights of the Parsons would have been observed in time for an exchange of whistles for the tugs to have passed in safety. The lookout of the Parsons was "cleaning up" preparatory to leaving the tug, and did not assume his post of duty on top of the car float until just previous to the collision. He did not observe the Welsh in time, and, when he did, the Welsh was exhibiting both side lights to the Parsons; the Welsh being ahead of the Parsons.

We are satisfied from the proof that the Parsons gave a signal of one whistle, which should have been heard, and with the aid of an efficient lookout at his post of duty the Parsons would have been observed. It is this misunderstanding of signals, or failure to hear the signals, that permitted the tugs and their own tows coming in such close proximity, and, when each observed the navigation of the other, there was not sufficient time for an exchange of signals to pass safely. We cannot say but that, if the Welsh had maintained a proper lookout, the Parsons would have been observed in time for a proper exchange of signals. Each tug changed its course in accordance with its own signals. The proper signals would have been exchanged, and the collision avoided, had each tug maintained an efficient lookout. It is a fundamental rule that a vigilant lookout must be kept on all vessels, and it is adherence to this obligation by tug owners which avoids collisions of the type here under consideration. The admiralty courts have always insisted upon the enforcement of this duty when the question of liability is presented. D., L. & W. R. R. v. Central R. R. of N. J., 238 Fed. 560, 151 C. C. A. 496.

We think the decree below should be modified; and both tugs held at fault. Decree modified, with costs to appellant against the Welsh. The District Court is directed to enter a decree in accordance with this opinion.