SMITH et al. v. BACON.

THE NBC–758.

THE NBC–757.

THE ROLAND.

No. 13414.

United States Court of Appeals
Fifth Circuit.

Feb. 15, 1952.

Robert Eikel, Houston, Tex., for appellant.

Carl G. Stearns, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from an interlocutory decree in admiralty holding appellants solely liable for damages resulting from a collision between certain barges which occurred in the Intracoastal Canal, about twenty miles east of Galveston, Texas, on the western side of Rollover Bay near where the canal enters the bay.

The collision occurred at about 9:30 p. m. on February 1, 1947. The tugs "Viva Clare" and "Carmichael", owned and operated by appellants, were lashed alongside of each other with the "Viva Clare" to starboard and were pulling tandem fashion astern of the "Viva Clare" two empty oil barges, the "NBC–757" and "NBC–758", in that order. The "Viva Clare" and "Carmichael" and their tow were proceeding west in the Gulf Intracoastal Canal, and the tug "Roland", owned and operated by appellee, was proceeding east while pushing ahead of her a tow consisting of three loaded oil barges, including the "Joseph F. Meyer, Jr." in the lead, the "W. Y. Fuqua" in the middle, and the "Eben Laws" next to the tug "Roland". When the "Viva Clare-Carmichael" tow and the "Roland" tow undertook to pass each other in Rollover Bay the "Joseph F. Meyer, Jr.", lead barge in the "Roland" tow, collided with the "NBC–757" and "NBC–758" in the "Viva Clare-Carmichael" tow, as a result of which the latter two barges were both damaged, the "NBC–758" exploding and being almost totally destroyed.

At the time of and prior to the collision, the weather was good and visibility was fair, although it was night and dark. The current in the canal was moderate, but there was a 15 or 20 mile an hour wind blowing from the north or northeast. This strong wind made navigation somewhat difficult for the "Viva Clare-Carmichael" tow, with its two unloaded (light) barges. There is testimony from witnesses aboard the tug "Viva Clare" that because of the northeasterly wind and its tendency to blow the empty barges to the south side of the canal it was decided that a starboard to starboard passing should be effected and that a light signal and the appropriate whistle signal were timely given. The testimony is in sharp dispute in this regard, however, and there is contrary evidence that no whistle signal for a starboard to starboard passing was ever given by the "Viva Clare" or "Carmichael" and that if any light signal or signals were given those in charge of the tug "Roland" and tow did not see them. In any event, no starboard to starboard passing was agreed upon and

there is evidence that shortly before the collision the "Viva Clare" did give a whistle signal for a port-to-port passing, which the "Roland" answered and agreed to, but that it was then too late for the "Viva Clare" and "Carmichael" to get their barges to their starboard or north side of the channel, and that at the time of the collision the "NBC–757" and "NBC–758" were trailing partially across the south side of the channel in the path of the "Roland" and her tow. Although it is without dispute that the wreckage of the barge "NBC–758" was found lying partially on the north side of the channel after the collision, there is evidence that the collision actually occurred on the south side of the channel, and that the force of the collision and explosion of that barge propelled it to its location thereafter.

The "Roland" was a powerful tug of 800 horsepower, 71 feet long and 20 feet wide, and each of the three barges it was pushing ahead were 177 feet long and approximately 38 feet wide, making the overall length of the forward tow of the "Roland" almost 600 feet from its wheelhouse.

The "Viva Clare" was approximately 65 feet long and 16 feet wide, and the tug "Carmichael" lashed to her port side was slightly smaller, being about 59 feet long and 17 feet wide. Each tug had approximately 320 horsepower. The barges "NBC–757" and "NBC–758" in tow of the "Viva Clare" were practically identical, each being 240 feet long and 50 feet wide. The bottom width of the channel at the point of the collision was approximately 125 feet.

It is without dispute that at the time of the collision there was no lookout stationed on the lead barge of the tow being pushed ahead of the "Roland", nor was there any lookout other than the relief captain, Maxwell, on duty in the pilothouse of the "Roland". Maxwell testified that as the two vessels got within a quarter of a mile of each other he was favoring his starboard side of the channel, and that he saw the Smith tugs favoring the other side; that the "Viva Clare-Carmichael" tow appeared to him to consist of a tug with a tow alongside her port side, as a green side light and

a red side light appeared to the port side of the tug and no lights or barges in tow were then observed by him astern of the tugs; that the "Roland" and its tow proceeded on through the canal at her standard towing speed of 5½ to 6 miles per hour, keeping herself and tow lined up straight and well over on their starboard side of the channel; that he later saw the tug "Viva Clare" flashing her searchlight around from side to side, but thought that she was attempting to locate the spar buoys marking the channel and did not interpret her flashing searchlight as a passing signal; that the tug "Viva Clare" later blew a single blast on its whistle, to which he replied with a single blast, agreeing to a port to port passing; that when the head of his forward barge (almost 600 feet ahead of where he was stationed in the pilothouse) was safely passing the tugs "Viva Clare" and "Carmichael" he flashed on his searchlight to locate the channel buoys and then for the first time ascertained that the "Viva Clare" was towing the two empty oil barges astern; that when his searchlight revealed the presence of these two barges, the "NBC–757" and "NBC–758", they were trailing at a 30 to 35 degree angle across the path of his lead barge and on his starboard side of the channel at a distance of about 300 feet; and that although he reversed his engines and sounded a warning whistle it was too late to avoid the collision.

It was shown that the tug "Viva Clare" had three white masthead lights shining at the time of the collision, as well as the required navigation lights of red and green; that the tug "Carmichael" also displayed the required running lights of red and green; that the tugs also had range lights and there is evidence that the barges astern of the "Viva Clare" each had the two required white lights, although Captain Maxwell of the "Roland" denied seeing those lights.

Appellants contend that the collision was caused by the failure of the "Roland" to have a competent lookout, and by its failure to navigate in accordance with the information conveyed by the lights displayed by the "Viva Clare" and "Carmichael" and their tow, as well as by the failure of the "Roland" safely to execute the agreed upon port to port passing; that the "Viva Clare" and "Carmichael" and their tow were in position to execute such passing and would have safely done so but for the unwarranted assumption of the "Roland" and its tow, based either upon its failure to recognize or its disregard of the light signals, that the "Viva Clare" and "Carmichael" had no tow astern; that, in any event, since the collision actually occurred on their side of the channel the "Viva Clare" and "Carmichael" were free from fault.

Appellees contend, however, and the district court found, that the reasonable thing for the tugs "Viva Clare" and "Carmichael" to have done in the passing situation was to insist upon a starboard-to-starboard passing; that failing to do this, they should not have signaled for a port-to-port passing but shoud have stopped their tow and sounded a danger signal, and were guilty of negligence in not doing so; and that in attempting the signaled port-to-port passing the "Viva Clare" and "Carmichael" did not get their barges up against the wind and over to their starboard side of the channel and this caused the collision. The only act of negligence which the district court found upon the part of the tug "Roland" and the barges in her tow was that they failed to keep a good lookout, in that there was no lookout on the lead barge, the "Joseph F. Meyer, Jr.," at the time of the collision. However, since the district court held that the absence of a lookout on the lead barge was not a proximate cause of the collision, the tug "Roland" and its tow were exonerated from fault. This appeal ensued.

Appellees assert in their brief that they do not agree with the finding of the district court that it was negligence for the "Roland" not to have a lookout stationed on the lead barge of its tow when the collision occurred, nor do they agree with the decision of this court upon which that finding is based, Zigler Co. v. Barker Barge Line,

5 Cir., 167 F.2d 676.[1] However, appellees further argue that accepting the Zigler case, supra, as being the law "at present in this circuit," it is not controlling here, since the facts are distinguishable from the facts in the case at bar. In the light of these assertions, we have carefully reexamined the decision of this court in the Zigler case and the facts upon which it is based. We expressly reaffirm that holding, not as laying down an arbitrary rule requiring tug operators to maintain a lookout on the lead barge of every tow regardless of the circumstances, but as authority under the facts there existing[2] that the failure to have a lookout stationed on the lead barge was a statutory fault "which may have contributed and probably did contribute to the collision", so as to require a sharing of the damages. The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 136, 22 L.Ed. 148; Zigler case, supra, 167 F.2d at page 679.

■ Regardless of the right and privilege of the "Roland" to maintain her starboard side of the channel, there was a continuing duty on her part to exercise care to avoid collision until the passing was safely effected, and for failure to discharge that duty she may be called upon to share the damages occasioned by the collision for her contributing fault. Sawyer v. McDonald, 5 Cir., 165 F.2d 426; The West Hartland, 9 Cir., 2 F.2d 834; The Kaga Maru, D.C., 18 F.2d 295, 298; The New York, 175 U.S. 187, 20 S.Ct. 67, 44 L.Ed. 126; see also 33 U.S.C.A., §§ 210 and 221.

■ Here, in view of the darkness prevailing, the narrowness of the channel, and other circumstances attending the collision, we cannot reasonably hold that had a competent and attentive lookout been stationed on the lead barge of the "Roland" tow he could not have warned Captain Maxwell that the "Viva Clare" and "Carmichael" had a tow astern either in time to have enabled Maxwell to avoid the collision or to have minimized its force and damaging effect.

■ Furthermore, it is without dispute that at the time of the collision there was no independent or competent lookout other than the relief captain, Maxwell, on duty anywhere on the tug "Roland" or its tow. Maxwell was acting as helmsman, and although appellees argue that he was also competent to act as his own lookout, the authorities are to the effect that the helmsman or officer in charge of the craft cannot under such circumstances be considered as a lookout. The Genesee Chief, 12 How. 443, 53 U.S. 443, 462, 13 L.Ed. 1508; The Ottawa, 3 Wall. 268, 70 U.S. 268, 273, 18 L.Ed. 165; The William A. Jamison, 2 Cir., 241 F. 950, 952; Dahlmer v. Bay State Dredging & Contracting Co., 1 Cir., 26 F.2d 603, 605. A review of the testimony impels the conclusion that a competent and attentive lookout would have accurately observed and interpreted the navigation lights displayed by the "Viva Clare" and "Carmichael" as properly indicating that barges were being towed astern, and had Maxwell timely observed and interpreted such lights we think the collision could probably have been avoided. It is of course a well settled principle that an inattentive lookout is no lookout at all. The Sunnyside, 91 U.S. 208, 219, 23 L.Ed. 302; The Welsh, 2 Cir., 276 F. 912, 914; The Kaga Maru, D.C., 18 F.2d 295, 298—

1. The district court, although finding the "Roland" and its tow negligent in this regard under the Zigler case, supra, further found that since the Captain of the "Roland" saw no lights on the barges "NBC-757" and "NBC-758" astern of the tug "Viva Clare", nor any other indications that said tug had barges in tow, that had there been a lookout stationed on the lead barge he could not have seen and discovered the barges in tow of the "Viva Clare" and "Carmichael" in time to avoid the collision.

2. In the Zigler case, the lead barge of the tow was approximately 400 feet forward of the pilothouse of the Whitecastle, instead of almost 600 feet, the distance here from the lead barge to the wheelhouse of the Roland. Under such circumstances we think the instant case presents a greater degree of statutory fault on the part of appellees than existed in the Zigler case, supra.

299; see also McCabe v. Old Dominion Steamship Co., D.C., 31 F. 234, 239–240.

The cause is hereby reversed and remanded with instructions to enter a decree dividing the damages equally between Charles C. Smith Company and George Bacon Towing Service, and for further proceedings not inconsistent with this opinion. The costs of this appeal are taxed against the appellee, George Bacon Towing Service.

Reversed and remanded.