**CHEMICAL BARGE LINES, Inc.,**
**Libelant,**

v.

**KOCH–ELLIS MARINE CONTRACTORS, Inc., and THE Tug FELLA C.,**
**Respondent.**

**KOCH–ELLIS MARINE CONTRACTORS, Inc., Bareboat Charterer and Owner, Pro Hac Vice of Steel Tank Barge KE 19, Libelant,**

v.

**THE Wood Diesel Tug RUBY O., her engines, furniture, apparel, etc., and Benjamin R. Edmundson d/b/a Edmundson Towing Company, Respondent.**

**Nos. 2240, 2242.**

United States District Court,
E. D. Louisiana, New Orleans Division.

Dec. 30, 1954.

Deutsch, Kerrigan & Stiles, Francis Emmett, New Orleans, La., for libelant Chemical Barge Lines, Inc.

Jones, Walker & Waechter, William B. Dreux, New Orleans, La., for respondent Edmundson Towing Co.

Cobb & Wright, Joseph V. Ferguson, II, New Orleans, La., for respondent Koch-Ellis Marine Contractors, Inc.

Phelps, Dunbar, Marks & Claverie, J. Barbee Winston, New Orleans, La., for

libelant Koch-Ellis Marine Contractors, Inc.

WRIGHT, District Judge.

On a clear but dark night, December 23, 1951, with no current afoot and no wind, the lead barge of a tow being pushed by the Tug Ruby O was in collision with the lead barge of a tow being pushed by the Tug Fella C in the Gulf Intracoastal Waterway between Mile 49 and Mile 50, some 400 feet west of the Lake Long Crossing. Cross libels have been filed by the owners of the tugs charging that the other tug was solely at fault in causing the collision.

The Ruby O is a steel Diesel towboat, pilothouse controlled, having an over-all length of 67 feet, beam of 14 feet, and depth of 9½ feet. She is powered by two GM Diesel engines, 165 HP, each of which is geared to a single screw. At the time of the collision, she was headed east, pushing three loaded oil barges, each 195 feet long, making the total length of the tow approximately 660 feet. Between Miles 49 and 50, the Intracoastal Waterway is approximately 125 feet wide and runs generally east and west. The Fella C is a steel Diesel tug, 55 feet in length, 17 feet in beam, 6 feet in depth, powered by a single 265 HP Diesel engine. At the time of collision, she was headed west, pushing two loaded oil barges approximately 175 feet in length, making the total length of the tow approximately 400 feet.

There are only two living eye witnesses to the collision, one from each tug. The captain of the Ruby O, who was on watch in the wheelhouse at the time of the collision, is dead, as is the captain of the Fella C. The only witness called by the Ruby O was the engineer, Price, who saw the collision, and the only witnesses called by the Fella C were Doucet, the mate on watch in the wheelhouse, and two other members of the crew who came on deck immediately following the collision.

As is customary in cases of this kind, the testimony of the witnesses from the two tugs is impossible to reconcile. The witnesses here cannot even agree on where the collision occurred, Price from the Ruby O saying it happened at the Lake Long Crossing while the witnesses from the Fella C testified it occurred in a bend in the Intracoastal Waterway 400 feet west of the crossing. The Court finds the point of collision between the two lead barges to be in the bend. The testimony of Price shows that, at the moment of collision, the Ruby O was favoring her starboard, or south, bank, while her lead barge had passed the point of the bend and her second barge was in the act of negotiating the point. Assuming this testimony to be true, at the moment of collision, the Ruby O, as well as the third barge of her tow, would have been west of the point and her lead barge, some 195 feet in length, would have been lying diagonally across almost the entire width of the canal. This testimony by Price as to the position of the Ruby O and her barges at the moment of collision is supported by the testimony of the witnesses from the Fella C. So it must be concluded that the point of collision was near the north bank of the waterway some 150 feet past the center of the bend.

Testimony of the witnesses from the two tugs is also in conflict as to the lights on the Ruby O. Price, while admitting that it was customary for the Ruby O to turn out her lights while navigating the canal in fog conditions, the reflection of the lights against the fog making it difficult to see the right-hand bank of the canal, testified unequivocally that the Ruby O and her tow were showing proper lights. Three witnesses from the Fella C, however, saw no lights whatever on the Ruby O or her tow, with the exception of one 32-point white mast light. These witnesses also engaged in a conversation after the collision with the master of the Ruby O in which attention was called to the fact that the Ruby O and her tow were without lights. Thereafter these witnesses saw the lights of the Ruby O and her tow go on. Under the circumstances, it must be concluded that at the time

of the collision, the Ruby O and her tow were showing only one small white mast light.

Neither tow had a lookout. On the Fella C, there was only one man above deck, the mate in the wheelhouse, while on the Ruby O, the captain was in the wheelhouse and the engineer was standing in the doorway to the engine room. Apparently, under conditions of good visibility, and for reasons of economy, it is not the practice of vessels navigating the Intracoastal Canal pushing tows to have lookouts on the bow of the lead barge. Why this practice was indulged in by the Ruby O and the Fella C is difficult to understand in view of the fact that each tug had six in crew working six hours on and six off. Certainly, in the circumstances of this case, no better use than as lookout could be found for one of the three watch standers.

There was testimony from the witnesses from both sides relative to passing signals and danger signals having been sounded, but neither vessel seems to have heard the other vessel's signals, although they were only a few hundred feet apart. It is possible that the noise of the engines on the tugs kept the pilots in the wheelhouse from hearing signals. This noise, however, would not have affected the hearing of a lookout on the bow of the lead barge of each tow, had there been one.

■ The faults of the Ruby O were gross and directly responsible for the collision. Instead of navigating her tow around the point of the bend so as not to block the channel, she allowed her tow to lie alongside her right-hand bank with the result that her lead barge came from behind the point and proceeded across the canal into the path of the tow of the Fella C. In addition, the Ruby O was guilty of the most grievous fault of navigating without proper lights. Apparently she had turned off her tow and running lights earlier in the evening when some little fog had been experienced, and had forgotten to turn them on again until attention was called to her failure after the collision. In addition, the Ruby O was attempting to navigate a 660-foot tow on a dark night around the points and bends of the Intracoastal Canal without sounding bend signals and without a lookout of any kind anywhere on the tug or tow.

■ The only fault of the Fella C was the failure to have a lookout as required by the Inland Rules. Inland Rules, Article 29, 33 U.S.C.A. § 221; Smith v. Bacon, 5 Cir., 194 F.2d 203; G. B. Zigler Co. v. Barker Barge Line, 5 Cir., 167 F.2d 676. She, too, must be cast in damages unless she can show that her failure in this regard could not have been a contributing cause of the collision. The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 126, 136, 22 L.Ed. 148. Doucet, the mate on watch on the Fella C, testified that before he reached the Lake Long Crossing, he saw a white mast light which afterwards proved to be on the Ruby O. At the time, however, he believed the light to be on the shore at the Texas Oil Company dock. Perhaps if he had had a lookout on the bow of the lead barge, almost 400 feet forward of his position in the wheelhouse, that lookout may not have confused the mast light of the Ruby O with the light on shore. That lookout may have been able to see that there were a tug and tow attached to that light and may have warned the mate thereof in time to avoid the collision. It is a combination of harsh rules which, on the basis of this one fault alone, casts the Fella C to divide damages equally with the Ruby O, whose wanton negligence contributed so much toward the collision.[1] The Pennsylvania,

1. Judge Learned Hand, dissenting, in Ulster Oil Transport Corp. v. The Matton No. 20, The Petroleum No. 7, The Carutica, 2 Cir., 210 F.2d 106, 110, said:
"Is it out of place to point out that the suit is one more illustration of our strange obstinacy in clinging to the division of damages and refusing to apportion them? This has become even more, egregious, when we reflect that, where personal injuries are in issue, we do follow the more enlightened doctrine, now in force in most countries."

supra; Smith v. Bacon, supra; G. B. Zigler Co. v. Barker Barge Line, supra; see Huger, The Proportional Damage Rule in Collisions at Sea, 13 Cornell Law Quarterly 530. But the rules are not of this Court's making. They will be enforced as made.

Both to blame.