**Joseph G. WILSON, Appellant,**

v.

**OIL TRANSPORT COMPANY,**
**Inc., Appellee.**

**No. 16330.**

United States Court of Appeals
Fifth Circuit.

March 27, 1957.

Rehearing Denied May 3, 1957.

Donald V. Organ, Samuel C. Gainsburgh, Raymond H. Kierr, New Orleans, La., for appellant.

P. A. Gaudet, Brunswick G. Deutsch, Deutsch, Kerrigan & Stiles, New Orleans, La., for appellee, Malcolm W. Monroe, New Orleans, La., of counsel.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

Appellant Wilson brought this suit under the Jones Act, 46 U.S.C.A. § 688 for personal injury and property damage allegedly sustained when the tug Suwannee, on which he was employed by the appellee as a cook, sank in the Intracoastal Waterway near Mile 244, West of Harvey, Louisiana, at approximately 3:00 a. m. the night of February 4, 1950. Appellant's motions for directed verdicts were overruled. The jury returned its verdict for the defendant, appellee, after which appellant's motions for judgment n. o. v. and in the alternative, for a new trial were overruled. The primary question to be considered here is whether, under the circumstances, the failure of the Suwannee to have a lookout upon the lead barge which it was pushing is presumed as a matter of law to have contributed to the sinking, placing upon the Suwannee the burden of establishing that its failure to have a lookout did not, or could not, have contributed to the sinking.

Shortly before 3:00 a. m., the Suwannee, a 650 H.P. diesel tug, engine room controlled and 76 feet in length, was proceeding eastward at six knots, with a three and one-half mile current pushing her, towards New Orleans in the Intracoastal Waterway, pushing a tow of two loaded oil barges each 250 feet in length and 50 feet in breadth. The tow was lashed to the tug with one inch cable. As the Suwannee approached a fifty degree bend in the waterway near Mile 244, West of Harvey, Louisiana, Pilot Adams sounded the proper signal, one prolonged blast. There was no answer, but Adams, the only man in the pilot house on watch, saw the searchlight of another vessel around the bend. Shortly thereafter the tug E. D. Smith, without a tow, rounded the bend proceeding westward. These vessels, each on its proper, the starboard, side of the channel met and passed safely, port to port.

When the lead barge of the Suwannee's tow was one hundred feet from the bend and the Smith abreast of the Suwannee, Adams sighted an unidentified tow of more than one barge following the Smith by about two hundred yards and hogging the center of the channel. Immediately realizing the danger of collision, Adams sounded the danger signal, reversed his engine full astern and put the wheel hard right in order to bring the tow closer to the bank. The headway of the Suwannee was not checked by reversing the engine full astern since her stopping dis-

tance under the circumstances was a quarter of a mile.

The lead barge of the Suwannee struck and slid along the bank of the channel as the unidentified tug and tow passed a few feet away. As a result of the Suwannee's tow striking the bank one cable parted, leaving the other intact, the ultimate effect of which was to pull the stern of the Suwannee into the bank, causing to list, take on water and, finally, to sink.

During all of this time the appellant was asleep in his bunk below deck. It was during his escape from the sinking tug that he allegedly sustained the injury for which this suit was brought.

In addition to Pilot Adams and the engineer on watch, a deckhand, who was a lookout in conjunction with other duties to be performed as requested, was on watch at the time of the accident and was in the galley where, according to Adams, he was supposed to be.

Citing 33 U.S.C.A. § 221,[1] and relying upon Zigler Co. v. Barker Barge Lines, 5 Cir., 1948, 167 F.2d 676, and Smith v. Bacon, 5 Cir., 1952, 194 F.2d 203, appellant contends that the appellee failed to maintain the proper lookout required by law, casting upon the appellee the burden of showing that its failure not only did not, but could not, have caused or contributed to the sinking under the "Pennsylvania Rule", The Pennsylvania, 1873, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148; and that appellee offered no evidence to rebut the legal presumption of causal connection between the sinking and the lack of a lookout, thus entitling appellant to a directed verdict.

■ We cannot agree. Under the circumstances, whether appellee maintained a proper lookout was a question of fact. In Parker Bros. & Co. v. De Forest, 5

Cir., 1955, 221 F.2d 377, 380, we said: "This Court did not intend, by its reaffirmation in Smith v. Bacon, supra, of the rule previously set forth in the Zigler case, supra, to lay down 'an arbitrary rule requiring tug operators to maintain a lookout on the lead barge of every tow regardless of the circumstances,' * *. The wording of the rule itself, as well as the controlling facts upon which the Smith and Zigler decisions are based, clearly reveal that a separate and independent lookout aboard a tug or the lead barge of its forward tow are not inexorable requirements of prudent tug navigation, but show that the question of competency of a lookout in any instance is primarily one of fact, to be realistically resolved under all of the circumstances * * *".[2]

Considering the cumbersome manueverability of the Suwannee with two loaded oil barges, together with the fact that it took a quarter of a mile to stop with her engine full astern, the small additional time within which to act, which might have been gained if a lookout had been on the lead barge in a position to sooner sight the unidentified tow and pass the word to Pilot Adams, was no more than a circumstance to be considered by the jury, and under these conditions as a whole the jury was warranted in finding that the outcome would have been no different if the lookout had been posted.

■ Appellant's alternate contention that he was entitled to a new trial for the refusal of the Court to grant a requested instruction and because the Court, in giving supplemental instructions requested by the jury, injected the circumstance of fog when there was no evidence regarding fog in the record is without merit. The requested instruction was adequately

---

1. "Usual additional precautions required generally. Art. 29. Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required

by the ordinary practice of seamen, or by the special circumstances of the case."

2. See also Koch-Ellis Marine Contractors v. Chemical Barge Lines, 5 Cir., 1955, 224 F.2d 115; Compania De Maderas, etc., v. The Queenston Heights, 5 Cir., 1955, 220 F.2d 120, and Petrich v. Hansen, 9 Cir., 1953, 204 F.2d 261.

covered by the Court's general charge and the comment regarding the fog was merely by way of illustration and clarification, not framed in such a way as to mislead the jury.

The judgment is, accordingly, affirmed.