**PROTECTION MARITIME INSURANCE COMPANY LIMITED, OF LONDON, ENGLAND, and Glacier General Assurance Company of Missoula, Montana, Plaintiffs,**

**Waxler Towing Company, Intervenor,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2156.**

United States District Court,
W. D. Kentucky,
Paducah Division.

May 21, 1973.

James G. Wheeler, Wheeler & Marshall, Paducah, Ky., for plaintiffs.

George J. Long, U. S. Atty., Louisville, Ky., Alfred H. O. Boudreau, Jr., U. S. Dept. of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION

ALLEN, District Judge.

On May 22, 1970, the Motor Vessel Eddie Waxler, hereinafter referred to as M/V Eddie Waxler, which measured 105 feet long, 30 feet in beam and 1,800 horsepower, was pushing a tow of four empty barges down river on the Ohio River. The M/V Eddie Waxler and tow went through Lock and Dam No. 50 which stretches from Crittenden County, Kentucky to Hardin County, Illinois, and shortly thereafter struck a mooring cell downriver from the dam and close to the Kentucky shore. The mooring cell was approximately 30.2 feet in diameter and

17 feet in height. At the time it was struck, the river stage was a little over 23 feet and, therefore, the cell was approximately 6 feet under water.

The cell which was struck was known as Cell No. 5. Like all the other 4 cells, 2 of which were below the dam and 2 above, it had a red buoy attached to a line hooked on the side of the cell for purposes of warning river craft of the cell's submerged condition. The weight of the testimony is to the effect that the buoy which was attached to Cell No. 5 was between 15 and 16 feet in length, although there was some testimony to the effect that the cable was 150 feet in length.

The evidence reveals that the pilot in charge of the M/V Eddie Waxler at the time the vessel struck the cell was Joe Earheart, Jr., a man who had not been up the Ohio River in five years immediately prior to the accident. It was further shown that the only other person in the crew who was awake at the time of the collision was an engineer who was down in the engine room and not acting as a lookout. It is further shown that the Master of the boat, Captain Joseph C. Frey, had piloted vessels between cells on many occasions but that he failed to warn Earheart of their location.

It is further shown that the Corps of Engineers had published a "Notice to Navigation Interests" on November 13, 1969, stating that the mooring cells above and below Ohio River Locks 50 and 51 had been completed and were available for use by tows transiting the locks. Plaintiff Waxler Towing Company admitted it had received this notice.

On April 13, 1970, a "Notice to Navigation Interests" was issued by the Corps of Engineers to its mailing list, among whom was the Waxler Towing Company, advising that the 1970 revision of the Ohio River charts were available for purchase. Waxler Towing Company did not purchase these charts, and the only charts aboard the vessel at the time of the collision were seven years old.

The collision between M/V Eddie Waxler and the cell occurred on a clear and windless night, at approximately 4 a. m. Earheart testified that after coming through the pass in the dam, since the water was high and no locking was necessary, he saw a red buoy about 50 to 60 feet from the port side of his tow and the next thing he knew after seeing the buoy was that the boat hit the cell and sank.

Plaintiffs introduced testimony by various river captains of long experience that if the cable which attached the buoy to the cell was 150 feet in length, that this would constitute an inadequate warning to vessels in the vicinity of the cells, and hence would constitute negligence. There was also some testimony to the effect that there had been previous accidents which had occurred near the scene of the collision between the M/V Eddie Waxler and the cell.

It was shown that the plaintiff insurance companies paid $105,000 to the Waxler Towing Company for repairs to the vessel, there being a $5,000 deductible clause in the insurance policy. The repairs lasted over a period of ten months, and a portion of them were done by the towing company at intermittent periods.

Waxler Towing Company introduced testimony in an attempt to show that its damages from loss of use of the M/V Eddie Waxler for a period of ten months was $70,000. Because of the conclusion reached by the Court that the United States is not liable, the Court will not discuss the quality of this testimony.

### Conclusions of Law

The Court concludes from the facts set out above that the Waxler Towing Company was guilty of negligence in the following respects:

First, and vital to its cause of action, it did not have the charts of April 13, 1970 aboard the vessel, but instead was relying upon charts which were seven years old.

Second, it had only its pilot for a lookout, and the rules of navigation contemplate that at least one person, in addition to the helmsman, must be on watch at all times.

Third, it had a pilot who had not been up the Ohio River for five years.

Fourth, its Master had knowledge of the location of the cells and did not convey that knowledge to the helmsman.

In the case of De Bardeleben Marine Corporation v. United States, 451 F.2d 140 (5th Cir. 1971), the Court held that the Government's obligation to warn mariners of the existence of dangerous conditions ceases at the time at which a prudent shipowner would have reasonably received a Notice to Mariners advising of the publication of a revised chart currently portraying the condition in question. As Chief Judge Brown points out, sailing without a chart or with an obsolete chart ranks as more than a mere indiscretion. Many courts have found such ships to be unseaworthy, citing The Maria, 91 F.2d 819 (4th Cir. 1937); the W.W. Bruce, 94 F.2d 834 (2nd Cir. 1938), cert. denied, Pacific-Atlantic S.S. Co. v. Weyerhaeuser Timber Co., 304 U.S. 567, 58 S.Ct. 950, 82 L.Ed. 1533; The Iowa, 34 F.Supp. 843 (D. Ore.1940).

On the basis of De Bardeleben, therefore, the failure of the M/V Eddie Waxler to have on board current charts is sufficient to foreclose the claim of the plaintiffs in this action.

However, in the instant case, plaintiffs' chances of recovery are also foreclosed because of the failure to have in charge of the vessel a pilot who was experienced in sailing on the Ohio River. See Kommanvittselskapet Harwi v. United States, 467 F.2d 456, 458, footnote 3 (3rd Cir. 1972).

The failure of the M/V Eddie Waxler to have a lookout, in addition to its pilot, at the time of the collision, would of itself constitute a bar to the plaintiffs' claims. See Smith v. Bacon, 194 F.2d 203 (5th Cir. 1952) and Zigler Co. v.

Barker Barge Lines, 167 F.2d 676 (5th Cir. 1948). See also 33 U.S.C. § 213.

In light of the above authorities, the complaints of the plaintiffs must be dismissed and the United States of America is entitled to recover its costs herein expended. Judgment in accordance herewith will be entered simultaneously with these findings of fact, conclusions of law and opinion.